**In re LIBERTY OUTDOORS, INC., Debtor.**

**Bankruptcy No. 95–41821–172.**

United States Bankruptcy Court, E.D. Missouri, Eastern Division.

Feb. 4, 1997.

Robert J. Blackwell, St. Louis, MO, Trustee/Plaintiff.

Scott A. Greenberg, Davis, Davis, Kasnetz & Greenberg, L.C., Clayton, MO, Lawrence C. Sumner, Sumner & Sumner, P.C., Clayton, MO, for Stephen and Karen Reese.

Gary L. Vincent, Ziercher & Hocker, P.C., Clayton, MO, for First National.

Ira M. Potter, Benson & Guest, St. Louis, MO, for Debtor.

### *MEMORANDUM*

JAMES J. BARTA, Chief Judge.

This matter is before the Court on the motion of Stephen and Karen Reese ("Movants") to compel assumption or rejection of an unexpired lease of nonresidential real property, and to allow and pay an administrative expense. At a hearing on August 16, 1995, Counsel for Robert J. Blackwell, the Chapter 7 Trustee ("Trustee") and Counsel for the Movants orally agreed that the lease had been rejected as of August 7, 1995, the date on which the Trustee vacated the premises. The court then bifurcated the Motion and scheduled a hearing for September 5, 1995 on the Trustee's objection to the allowance of an administrative expense. The matter has been submitted to the Court on the record as a whole, including the oral argument of counsel on September 5, 1995.

This is a core proceeding pursuant to Section 157(b)(2)(B) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. Sections 151, 157 and 1334, and Rule 9.01 of the Local Rules of the United States District Court for the Eastern District of Missouri.

### Background

Liberty Outdoors, Inc. ("Debtor") was a wholesale distributor of sporting goods. An Involuntary Petition was filed against Liberty Outdoors, Inc. on April 5, 1995. On June 21, 1995, the Court entered an Order for Relief under Chapter 7 of the Bankruptcy Code, after Counsel for the Involuntary Debtor orally withdrew the Debtor's initial opposition to the Petitioning Creditors' allegations. A trustee was promptly appointed and qualified.

On July 7, 1995, the Court granted the Chapter 7 Trustee's Application to operate the Debtor's business consistent with the orderly liquidation of the estate, pursuant to 11 U.S.C. § 721. On July 13, 1995, the Movants filed this motion to compel assumption or rejection of a commercial lease. They also contended that they are entitled to allowance of an administrative expense for rent for the period from June 1, 1995 through August 7, 1995 in the amount of $9,170.32, and that such claim should be paid immediately.

The Trustee opposed the request for allowance and payment of a claim for the full amount of rent as an expense of administration, because the Debtor was not actively engaged in business; because its inventory had occupied less than the entire space provided for in the lease; and because the Debtor was not the sole entity that occupied the premises during that period. The Trustee argued that the claim should be discounted to reflect only the portion of the rent that benefitted the estate.

The Movants' testimony in this matter has established that prior to July 8, 1994, Stephen Reese had been the sole shareholder of the Debtor. On July 8, 1994, approximately nine months prior to the filing of the Involuntary Petition, Stephen Reese sold one-hundred percent of the shares of the Debtor to Matthews and Company, Inc. *Exhibit "B" to Reeses' Response to Trustee's Cross Motion, Adversary Proceeding Number 95–4600, Document Number 22.* The consideration included a payment of $100.00 plus the release of the Movants' from any obligations

they may have had that were based on the Debtor's objections to First National Bank and the Small Business Administration. The sale agreement also provided for the injection of $150,000.00 cash capital into the Debtor within 60 days of the stock sale closing. The record indicates that this cash contribution to capital was never made. Stephen Reese remained an employee of the Debtor in the position of manager under a one year employment contract.

On the same date, July 8, 1994, the Debtor by its new owner, entered into a written agreement to lease the Movants' commercial real property for a period of five years. *Exhibit "A" to Reeses' Motion to Compel and for Payment of Rent, Main File Document Number 35.* The Movants' testified that the Debtor operated its business at this location from July 8, 1994 (prior to the commencement of this case), until the entry of the Order For Relief under Chapter 7 on June 21, 1995.

The Movants testified further that, knowing Matthews and Company, Inc. and/or R. Taylor Matthews owned other entities, they had attempted to negotiate a clause in the lease regarding additional rent in the event that the Debtor chose to sublet a portion of the space to other entities. The Movants abandoned their efforts when it became apparent that such a clause would be a "deal breaker".

The Court finds that based upon the documents submitted in this record, the Debtor was the sole lessee of the Movants' premises; that the lease had not terminated as of the commencement of this case; and that the premises were occupied by the Debtor, or were used to store a portion of the Debtor's inventory through August 7, 1995 (the date of the rejection of the unexpired lease); and that some postpetition sales of inventory occurred from this location.

The evidence has established that, following the entry of the Order for Relief under Chapter 7, the entire first floor of the Movant's building was warehouse space that was used to store empty shelving and the remainder of the Debtor's inventory. The second floor was divided equally between fixtured warehouse space, office space, and a demonstration target range. The Movants testified that before and after the entry of the Order for Relief, the office space was occupied by the Debtor and other entities owned by R. Taylor Matthews, Jr., and/or Matthews and Company, Inc., including an entity known as National Health Care Systems, Inc. The target range, originally designed for the use of clients of the Debtor, was used by the Matthews entities as a benefit for their employees. Immediately following the rejection of the lease by the Trustee on August 7, 1995, National Health Care Systems, Inc. became the lessee under a new lease, and paid the rent for the remainder of the month of August.

Other than the written lease, neither the Debtor nor the Trustee entered into an agreement with the Movants for the use of the building for the period after the entry of the Order for Relief on June 21, 1995, and prior to the agreed date of rejection, August 7, 1995. Similarly, there was no agreement as to the amount of any rent that was to be paid from the Debtor's assets during this period. The Movants testified that no effort was made to find another tenant to lease the premises until the Debtor's lease was rejected by the agreement with the Trustee.

## Discussion

The Movants have argued that, pursuant to 11 U.S.C. § 365(d)(3), they are entitled to be immediately paid the full amount of the rent reserved under the lease; and that if the rent has not been paid, they must be allowed a priority administrative expense in that amount without regard to the presence or absence of any benefit to the estate. The Movants have relied on the 1984 amendments to Section 365(d) that were intended "to secure for lessors the full amount of rent due during the 60–day period while the trustee determines to accept or reject the lease, regardless of any benefit to the estate." *In re Pacific–Atlantic Trading Co.,* 27 F.3d 401, 405 (9th Cir.1994).

Section 365(d) reads in pertinent part: "The Trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any expired

lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1)...." 11 U.S.C. § 365(d)(3). Should the trustee fail to timely perform these obligations however, no specific remedy is described in Section 365.

The Movants have urged the Court to find that Section 365(d)(3) must be applied mechanically in its entirety, without regard to the equities of a given situation. The language of Section 365(d)(3) and its position in the scheme of equitable distribution under the Bankruptcy Code, does not permit such a determination.

■ On consideration of the legislative history with respect to Section 365(d)(3), and having considered the case law that has developed in this area, the Court finds and concludes that the statute is intended to create a claim for the benefit of a lessor, based on a trustee's failure or inability to perform all obligations under an unexpired lease of nonresidential real property; and that such claim is to be allowed in the same manner as a request for allowance of an expense of administration under Section 503(b)(1), except that the lessor need not establish that the expenses benefited or preserved the estate. *See, In re Gatti's, Inc.,* 164 B.R. 929 (Bankr.W.D.Tex.1994); *In re Orvco, Inc.,* 95 B.R. 724 (9th Cir. BAP 1989).

■ The evidence presented here has established that the lease was solely the responsibility of the Debtor, and that the Debtor was in fact occupying the premises prior to rejection of the lease, whether for its own benefit or for the benefit of others. The evidence did not establish that the Movants controlled the Debtor's use of the premises. If any of the Debtor's interests under the lease were improperly transferred, the record has not shown that the Movants were in a position to have initiated or aborted such transfers.

Under the facts of this case and pursuant to Section 365(d)(3), the Court finds and concludes further that the Movants are to be allowed a claim for the reasonable expense associated with the unexpired lease based upon the contract rate of rent owed for the period following the entry of the Order for Relief on June 21, 1995, through August 7, 1995, the date of rejection by the Trustee, without regard to the presence or absence of a benefit to the estate. The evidence established that the contract rate of rent was $4,120.00 per month. The period for which the claim is allowed here includes the last ten days of June, all of the month of July, and the first seven days of August. The Movants' request for an administrative expense claim will be granted in the amount of $6,423.65. Any issues with respect to claims for a time period other than that allowed here have not been submitted for a determination in this matter.

■ The Movants have contended further that the allowed expense should be paid immediately, without regard to the presence or absence of a benefit to the estate, and notwithstanding other expenses that have been or might be allowed as expenses of administration. To give meaning and effect to Section 365(d)(3), its language has been interpreted to create a claim that may be allowed in the category of administrative expenses. However, in the absence of specific language creating a super priority, it is not necessary to treat the claim more favorably than similarly situated expenses of administration are treated.

Although the right to an allowed claim arises by operation of law under Section 365(d)(3), in most instances, particularly when the case is proceeding under Chapter 7, the lessor will place the issues before the Court by means of a motion to assume or reject, or by a request for payment. If the parties are unable to compromise or otherwise settle any disputed issues, this procedure will permit the Court to include equitable considerations in its determination of the amount of damages, the timing of payment of the allowed claim, and any unduly prejudicial result that may be imposed on the holders of other administrative expense claims as a result of the payment of the lessor's claim.

In the circumstances presented here, the Court further finds and concludes that, it is appropriate that this claim be paid pro rata with all other administrative claims of this estate. These circumstances include the overlapping interests and relationships of the

Debtor as lessee; the interests and relationships of R. Taylor Matthews and/or Matthews and Company, Inc. and related entities as purchaser of the Debtor and employer of Stephen Reese after the purchase; and the fact that Stephen Reese was the Debtor's landlord as well as the former owner and subsequent employee/manager prior to and during the involuntary and the Chapter 7 proceedings. These circumstances convince the Court that it would be inequitable to allow the payment of the Movants' rent claim in full prior to payment of other administrative claims in this case. Therefore, the Movants' request for immediate payment of this expense will be denied.