## In re PACIFIC–ATLANTIC TRADING CO., a California corporation, Debtor.

### Edward F. TOWERS, Trustee, Plaintiff–Appellant,

v.

### CHICKERING & GREGORY, a partnership, Defendant–Appellee.

No. 92–15362.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 17, 1993.

Decided June 20, 1994.

Dennis D. Davis, Goldberg, Stinnett & MacDonald, San Francisco, CA, for plaintiff-appellant.

Jay W. Luther, Chickering & Gregory, San Francisco, CA, for defendant-appellee.

Before: LAY,* HUG and SCHROEDER, Circuit Judges.

Opinion by Judge HUG.

HUG, Circuit Judge:

In this case, we are asked to decide whether a trustee's failure to pay the full amount of a debtor's rent obligation, under a nonresidential real estate lease, for the period following the order for relief but prior to rejection of the lease, pursuant to 11 U.S.C. § 365(d)(3), gives rise to an administrative claim for the full amount of the rent accrued during that period, regardless of the actual value conferred by the lease upon the estate. We conclude that it does.

---

* Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

## I.

### *FACTUAL AND PROCEDURAL BACKGROUND*

In 1986, Chickering and Gregory ("Chickering") entered into a sublease with Pacific–Atlantic Trading Corporation ("Pacific"). Under this lease, Pacific sublet approximately 26,645 square feet of office space on the 22nd and 23rd floors of Three Embarcadero Center, San Francisco, California. The term of this lease was July 1, 1986 to February 28, 1992. Commencing August 1, 1986, the rent was $46,628.75 per month in advance, along with any additional charges imposed upon Chickering by its lessor under the master lease. Pacific also leased a certain amount of storage space in the building for an additional monthly charge.

On September 15, 1988, an involuntary petition was filed against Pacific, pursuant to Chapter 7 of the United States Bankruptcy Code. On or about that time, Pacific ceased to conduct business. At the time the petition was filed, Pacific was $10,000 in arrears on its June rental payment, and totally in arrears on its payments for July, August, and September. By the time the petition was filed, Pacific owed $145,886.25 in unpaid rent.

On October 31, 1988, an order for relief was granted and Edward F. Towers was appointed trustee. Shortly after Towers' appointment, he had a conversation with a Chickering partner, who indicated that Chickering expected the bankruptcy estate to pay rent. The trustee, however, made no payments on behalf of the estate. On November 10, the trustee's counsel faxed a letter to Chickering advising it that Chickering was "under the misapprehension that the trustee is bound by the terms of [Chickering's] sublease to [Pacific] and/or that [Chickering] is entitled to some administrative priority for rents occurring post petition." The letter continued:

> Mr. Towers advises me that the lease has no value and that he does not intend to assume it. Thus, the lease will be rejected as a matter of law. The estate is not subject to the terms of the lease unless the trustee expressly assumes the lease. Furthermore, the estate is liable for an administrative expense only to the extent that the trustee uses the premises and receives benefit thereby.
>
> The trustee is not using the premises and is promptly removing such odds and ends of furnishes as remain thereon. You should take such steps as are necessary to lease the premises. Anything we can do to assist you in gaining access and use of the premise will, of course, be done.

The bankruptcy court ruled that this letter did not constitute a formal rejection of the lease. The trustee does not challenge the validity of that order. The lease was deemed rejected 60 days after the date of the order for relief, pursuant to 11 U.S.C. § 365(d)(4). The furnishings belonging to the estate remained on the premises until November 25, 1988. Chickering did not recover the premises until after the lease was deemed rejected.

On October 11, 1989, Chickering filed a proof of claim for a total amount of $715,760.15 plus "other amounts as allowed by law and not limited by 11 U.S.C. § 502(b)(7)." Chickering asserted that $93,257.50 of its claim was entitled to administrative priority. This amount represents the amount of rent accrued at the contract rate during the 60–day period prior to rejection of the lease by operation of law. The trustee filed a complaint challenging the claimed administrative priority. After a trial on stipulated facts, Bankruptcy Judge Thomas Carlson allowed Chickering an administrative claim for the full amount sought. The trustee appealed to the district court, which affirmed in a brief dispositive order. This appeal followed.

## II.

### *DISCUSSION*

A bankruptcy trustee, subject to the court's approval, may assume or reject executory contracts and unexpired leases. 11 U.S.C. § 365(a) (1993). Where the debtor is a lessee under an unexpired lease of nonresidential real property, the trustee has 60 days from the date of the order for relief to decide whether to assume or reject the lease. 11 U.S.C. § 365(d)(4) (1993). If the trustee does not act within that time, the lease is

deemed rejected as a matter of law. *Id.* During the period prior to assumption or rejection, the trustee must continue to "perform all the obligations of the debtor" under that lease. 11 U.S.C. § 365(d)(3) (1993). In this case, the trustee failed to assume or reject the lease within the 60–day period, and the lease was deemed rejected at the end of that period under section 365(d)(4). During the 60–day period prior to rejection, however, the trustee did not perform the debtor's obligation to pay rent to Chickering, pursuant to section 365(d)(3).

Chickering sought an administrative claim for the full amount of the rent for the 60–day period, and the bankruptcy court entered an order allowing the claim. The court reasoned that because section 365(d)(3) created an immediate obligation to pay the full amount of the rent specified by the lease during the 60–day period prior to assumption or rejection, the trustee's failure to pay the rent during that period gave rise to an administrative claim for that full amount.

■■■ The trustee argues that the district court erred by granting Chickering administrative priority for the full amount of the rent. The trustee maintains that section 365(d)(3) is silent on the treatment of rent obligations, which are not performed in accordance with the statute's mandate, and that administrative priority is governed by 11 U.S.C. §§ 503 and 507. Section 503(b)(1)(A) provides that after notice and a hearing, the court shall allow administrative expenses, but only to the extent they represent "the actual, necessary costs and expenses of preserving the estate . . . ." 11 U.S.C. § 503(b)(1)(A) (1993); *In re Dant & Russell, Inc.,* 853 F.2d 700, 707 (9th Cir.1988). An administrative rent claim under this standard is valued "under an objective worth standard that measures the fair and reasonable value of the lease." *Dant & Russell,* 853 F.2d at 707. Section 507 provides that administrative expenses have first priority among unsecured claims. 11 U.S.C. § 507(a)(1) (1993). The trustee contends that the bankruptcy court should have determined the fair and reasonable value conferred by the lease upon the estate and granted administrative expense priority for only that amount.

Section 365(d)(3) was added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984). The statute provides in relevant part:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period.

Prior to these amendments, the Code did not require the trustee to timely perform its obligations under a nonresidential lease or to provide a specific time for assumption or rejection of the lease. Lessors were entitled to an administrative priority for occupancy of the premises, but only to the extent allowed under section 503(b)(1), which was an amount equal to the reasonable value of the debtor's actual use and occupation of the property. *See, e.g., Dant & Russell,* 853 F.2d at 707 (section 365(d)(3) not applicable to this case); *In re Thompson,* 788 F.2d 560, 562 (9th Cir.1986) (same). The pertinent part of the legislative history indicates that the statute was enacted to ameliorate the immediate financial burden borne by lessors of nonresidential property during the period in which trustees decided whether to assume a lease:

> [The second] problem is that during the time the debtor has vacated space but has not yet decided whether to assume or reject the lease, the trustee has stopped making payments due under the lease. These payments include rent due the landlord and common area charges which are paid by all tenants according to the amount of space they lease. In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position . . . .

The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time pending the trustee's assumption or rejection of the lease.

130 Cong.Rec. S8894–95 (daily ed. June 29, 1984) (remarks of Senator Hatch). In light of these objectives, and the specific language requiring a trustee to perform "all the obligations of the debtor ... *notwithstanding section 503(b)(1)*," courts have held section 365(d)(3) to authorize an administrative expense claim for rent at the full contract rate. *See, e.g., In re Wingspread Corp.*, 116 B.R. 915, 925 (Bankr.S.D.N.Y.1990) (additional cases cited therein).

The trustee in this case relies principally upon *In re Orvco*, 95 B.R. 724 (9th Cir.BAP 1989), in which the Ninth Circuit Bankruptcy Appellate Panel diverged from these authorities. The BAP acknowledged in *Orvco* that section 365(d)(3) obligates a trustee "to timely perform the obligations of the debtor." *Id.* at 726. The BAP observed, however, that the statute " 'does not expressly state what consequences follow from a violation of its terms.' " *Id.* at 727 (quoting *In re Southwest Aircraft Services, Inc.*, 831 F.2d 848, 853 (9th Cir.1987), *cert. denied*, 487 U.S. 1206, 108 S.Ct. 2848, 101 L.Ed.2d 885 (1988)). The BAP further stated that "[n]othing in the language of the section requires administrative or, worse yet, super-administrative status" for unpaid rent. *Id.* at 728. According to the BAP:

> [T]he language of section 365(d)(3) "notwithstanding section 503(b)(1)," means that notwithstanding the administrative or non-administrative status of a claim by a lessor, a bankruptcy court must order its payment pending assumption or rejection. It does not mean that the necessity for showing the reasonableness of the rent or any of the other factors considered under section 503(b)(1)(A) has been completely abrogated.

*Id.* at 728. Accordingly, the BAP concluded that where a lease of nonresidential property

is deemed rejected, and the trustee has not paid rent during the period prior to rejection, "a lessor must establish its claim for administrative status under section 503(b)(1)(A)...." *Id.* at 728.

The plain and unconditional language of the statute demands that a trustee promptly pay the full amount of rent due under a nonresidential real property lease during the 60–day period pending assumption or rejection. Under the view espoused in *Orvco*, a trustee can evade this responsibility merely by refusing to pay the debtor's rent obligations prior to rejection of the lease. At that point, according to *Orvco*, a lessor may receive administrative priority for its unpaid rent, but only after it proves the reasonable value conferred upon the estate, under section 503(b)(1), and only to the extent of that value. All the while, the lessor would be forced to provide current services at its own expense. *See Wingspread*, 116 B.R. at 926. This result is wholly inconsistent with the mandate of section 365(d)(3). By providing for timely performance of *all* lease obligations, "notwithstanding section 503(b)(1)," the statute has already granted priority payment status to the full amount of rent due under nonresidential leases. The fact that a trustee does not comply with this directive before the lease is rejected cannot justify denying a lessor the priority treatment for the full amount which Congress has already bestowed upon it.

The *Orvco* decision relies, in part, upon the premise that a lessor is not without remedy because the lessor may move for a bankruptcy court order for the trustee to pay rent, and order the immediate surrender of the leased premises if the trustee fails to comply. *Orvco*, 95 B.R. at 727. One court has even suggested that the existence of these remedies makes it unfair to grant administrative priority to a lessor's claim for the contractual rent during this period: "It would be truly an unfair proposition to permit the landlord to sit idly by and not seek either payment or recovery of the premises by relying on the fact that his contractual rent will be accorded administrative priority occupied and presented no benefit to the estate." *In re Tammey Jewels, Inc.*, 116 B.R. 292, 294 (Bankr.

M.D.Fla.1990). We observe, however, that section 365(d)(3) expresses the intent of Congress to secure for lessors the full amount of rent due during the 60–day period while the trustee determines to accept or reject the lease, regardless of any benefit to the estate. The statute does not require the lessor to take any action.

The present case illustrates this point well. Here, the estate of a Chapter 7 debtor used the premises for little more than the storage of office furniture pending its sale to a liquidator. The trustee gave the lessor notice that it did not intend to assume the lease, but that notice did not constitute a formal rejection, and the estate continued to occupy the premises. While it appears that the lessor did not take legal steps to reclaim the premises prior to the lease's deemed rejection, the statute does not place the burden on the lessor to do so. By requiring the trustee to timely pay the debtor's rent, Congress clearly placed the burden on the trustee to promptly and properly reject the lease if it has no intention of assuming it and, in the meantime, to continue to perform the debtor's obligations under the lease.

The *Orvco* decision also relies on our decision in *In re Southwest Aircraft Services, Inc.*, 831 F.2d at 853 for the proposition that section 365(d)(3) "does not expressly state what consequences follow from a violation of its terms." *See Orvco*, 95 B.R. at 727. We find, however, that nothing in *Southwest* forecloses the conclusion we reach here. In *Southwest*, we were asked to decide whether a bankruptcy court erred by refusing to grant the motion of a debtor-in-possession to extend the 60–day assumption period under section 365(d)(4), where the debtor-in-possession had filed the motion before the end of the 60–day period, but the court did not consider it until after the 60–day period. *Southwest*, 831 F.2d at 848–49. In reversing and remanding, we rejected an argument made by the lessor that the lease had been automatically rejected by the debtor-in-possession's failure to timely pay the rent during the 60–day period, pursuant to section 365(d)(3). *See id.* at 853–54. We found nothing in the language or legislative history of section 365(d)(3) mandating that a default in the timely failure to pay rent should automatically result in rejection of the lease. *Id.* at 854. There was no question whether the debtor-in-possession was obligated to make the payment, in fact, the payment for the 60–day period was tendered at the time the motion for extension was made. The only issue was whether the default in the *timeliness* of the payment operated as an automatic rejection of the lease. We held it did not and remanded for the bankruptcy court to consider this default when it hears the motion for extension.

In contrast, in this case, the trustee defaulted in making the payments required by section 365(d)(3), which, in effect, would have operated as an administrative priority, and does not now intend to do so. He seeks to have that obligation reduced by the operation of section 503(b)(1). This cannot be squared with the specific statutory direction that the obligations under section 365(b)(3) exist "notwithstanding section 503(b)(1)." Adopting the trustee's interpretation of the statute would mean that the trustee could benefit from disobeying the specific mandate of the statute, an untenable interpretation. We conclude that section 365(d)(3) authorizes administrative status for the unpaid rent for the 60–day period. The granting of administrative priority for this period is consistent with the intent of section 365(d)(3) and necessary to carry out its objectives.

Finally, we note that we have not been asked to decide, nor do we express any opinion, on whether amounts which a trustee fails to pay under section 365(d)(3) are entitled to "super-priority" status. The parties in this case do not dispute the fact that there are enough assets to pay all administrative claims, including that of Chickering.

## III.

### CONCLUSION

For the foregoing reasons, we conclude that the district court properly affirmed the bankruptcy court's allowance of Chickering's administrative expense claim for 60 days' rent at the contract rate.

**AFFIRMED.**