In re Moshe Eliezer CUKIERMAN, Debtor.

Moshe Eliezer Cukierman, Appellant,

v.

Susan L. Uecker, Trustee for the Estate of Trans–Action Commercial Mortgage Investors, Ltd.; David A. Bradlow, Trustee for the Estate of Trans–Action Commercial Investors, Ltd.: John T. Kendall, Chapter 7 Trustee; and Linda Eskstrom Stanley, United States Trustee, Appellees.

BAP Nos. NC–98–1890–MeRRy, NC–99–1045–MeRRy.
Bankruptcy No. 92–48391 NK.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted July 23, 1999.

Decided Nov. 29, 1999.

Stephen D. Finestone, Law Offices of Stephen D. Finestone, San Francisco, CA, for Moshe Eliezer Cukierman.

Neil W. Bason, Hovis, Smith, Stewart, Lipscomb & Cross, L.L.P., San Francisco, CA, for Susan L. Uecker and David L. Bradlow.

Before MEYERS, RUSSELL and RYAN, Bankruptcy Judges.

### OPINION

MEYERS, Bankruptcy Judge.

### I

These appeals involve the scope of Bankruptcy Code ("Code") Section 365(d)(3) and a landlord's entitlement under that section to an administrative claim when a debtor does not meet postpetition obligations under a lease of real property.

The Chapter 11 debtor's lease required the payment of certain obligations embodied in two promissory notes. The amounts were designated as rent under the lease. The landlord claimed that the amount in question, as well as attorney's fees and interest, fell under Section 365(d)(3). The debtor argued that the amount due under the lease was not rent and was excluded from the scope of Section 365(d)(3).

The bankruptcy court found that the amount in question was rent and overruled the objection as to that part of the claim. However, it denied the creditor's claim for attorneys' fees and interest. The debtor appealed and the creditor filed a cross-appeal.

We AFFIRM in part, REVERSE in part, and VACATE and REMAND in part.

### II

### FACTS

Moshe Eliezer Cukierman ("Debtor") owned certain developed real property ("Property") in Berkeley, California. In December 1985, the Debtor sold the Property to Trans–Action Commercial Investors, Ltd. and Trans–Action Commercial Mortgage Investors, Ltd. ("TACI/TAC-MI"). Under the terms of the sale, the Debtor continued to operate the Property and guaranteed certain income to TACI/TACMI. TACI/TACMI, in turn, executed three promissory notes totaling $8.5 million, which were secured by deeds of trust on the Property.

A dispute arose regarding the rights and obligations of the parties, and in June 1988 the parties entered into a settlement agreement ("Settlement Agreement"). Under the terms of the Settlement Agreement, TACI/TACMI paid the Debtor $433,374.55 and delivered a new promissory note for $196,875, and the Debtor reconveyed the deeds of trust securing the notes. The Debtor entered into a 17½ year lease of the Property. Also, TACI/TACMI loaned the Debtor $600,000, for which the Debtor executed two promissory notes ("Promissory Notes"), one for $100,000 and a second for $500,000.

The repayment of the Promissory Notes was set forth in the lease and referred to as rent. On the $100,000 note, no payments were due and no interest was to accrue for four years. On the $500,000 note, no payments were due and no inter-

est accrued for five years. Once payments began, the Promissory Notes were amortized over 10 years and 12½ years with monthly payments of $1,321.57 and $5,852 respectively.

The Debtor filed for bankruptcy under Chapter 11 of the Code on November 20, 1992. He filed a motion to assume the lease, but the motion was denied. On November 3, 1993, the court entered an order deeming the lease rejected as of October 30, 1993. The case was converted to Chapter 7 on March 19, 1994.

In October 1994, TACI/TACMI filed a proof of claim for $1,315,118.63, including $92,898.65 as an administrative claim, citing to Section 365(d)(3).[1]

The Debtor objected to the claim for administrative priority on the ground that the amounts due under the Promissory Notes were unrelated to the use of the premises and should be treated as part of TACI/TACMI's unsecured claim. Prior to the hearing on the objection, TACI/TACMI sought to include attorneys' fees and interest as part of its priority claim.

The court overruled the Debtor's objection. It held that the challenged obligation qualified as rent pursuant to the reasoning of *In re McSheridan*, 184 B.R. 91, 99–100 (9th Cir. BAP 1995). The court denied TACI/TACMI's request to treat the attorneys' fees they incurred postpetition as an administrative claim. It likewise rejected TACI/TACMI's claim to the extent it sought interest on the amount due under the Promissory Notes. Both parties appealed.

1. TACI and TACMI both subsequently filed their own petitions for bankruptcy. David A. Bradlow has continued to prosecute the claim of TACI as the trustee for the TACI bankruptcy estate, while Susan L. Uecker has continued to prosecute the claim as the trustee on behalf of the TACMI bankruptcy estate.

2. The Panel issued an order directing the parties to address the issue of standing at oral argument. The standard is whether the Debtor will be pecuniarily affected by the court's ruling. *In re Fondiller*, 707 F.2d 441, 442

## III

## STANDARD OF REVIEW

 The Panel reviews the court's findings of fact for clear error. *In re Kashani*, 190 B.R. 875, 881 (9th Cir. BAP 1995). The scope of section 365(d)(3) is a matter of statutory construction that the Panel considers *de novo*. *In re Beguelin*, 220 B.R. 94, 97 (9th Cir. BAP 1998).

## IV

## DISCUSSION[2]

A. *Obligations Under the Promissory Notes Fall Within the Scope of Section 365(d)(3)*

Section 365(d)(3) requires the debtor in possession to "timely perform all the obligations ... arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." This section was added to the Code in 1984. *In re Orvco, Inc.*, 95 B.R. 724, 726 (9th Cir. BAP 1989). Prior to its inclusion, the estate was only responsible for the reasonable value of the use and occupancy of the premises. *Id.* at 727.

Courts have grappled with the scope of this Section. The issue initially raised was whether lessors were given priority for any claim that arose under the lease postpetition, or did the lessor merely have standing to seek a court order compelling timely performance. The ambiguity of the section was further compounded by the reference to Section 503(b)(1). Pursuant

(9th Cir.1983). The Debtor asserted that he has nondischargeable tax debt that will not be paid in part because of the allowance of this claim as an administrative claim. The Panel is satisfied that the Debtor has standing to bring this appeal. *See McGuirl v. White*, 86 F.3d 1232, 1235 (D.C.Cir.1996) (insolvent debtor had standing to challenge administrative claim where reduction of claim would lead to reduction of debtor's post-bankruptcy liability for nondischargeable debts).

to Section 503(b)(1), a court shall allow administrative expenses, but only to the extent they represent "the actual, necessary costs and expenses of preserving the estate...." That raised the question of whether the lessor's claim based on post-petition obligations was limited by Section 503(b)(1) to those obligations necessary for preserving the estate.

For some time, *Orvco* was the leading case in this circuit on the scope of Section 365(d)(3). In that case, the debtor failed to assume or reject a lease within 60 days, so the lease was deemed rejected pursuant to Section 365(d)(4). The creditor then filed a claim contending that the debtor failed to make payments required under the lease during the 60–day period, and that the claim based on this obligation should be granted administrative status under Section 365(d)(3).

The Panel held that a court could order the immediate surrender of the premises if the debtor failed to timely perform all obligations under the lease. But it also held that "once [the] lease is deemed rejected, the language of the section does not attempt to determine the administrative claim status of the rent obligation." 95 B.R. at 727–28. It further held that the lessor was still required to establish that its claim met the necessity requirement of Section 503(b)(1), taking into consideration such factors as the reasonableness of the rent in question.

This holding meant that a debtor in possession or trustee could fail to pay obligations due under a lease of real property and the lessor's only remedy was to ask the court to either compel payment or order an immediate surrender of the premises. The lessor was only entitled to an administrative claim equal to the value of the estate's use of the premises prior to rejection.

The Ninth Circuit Court of Appeals rejected *Orvco* in *In re Pacific–Atlantic Trading Co.*, 27 F.3d 401 (9th Cir.1994). In that case, the trustee failed to pay the rent required under a lease of nonresiden-

tial real property and allowed the lease to be deemed rejected after 60 days. The lessor filed a claim seeking administrative status for the contract amount of the rent that accrued during the 60–day time period prior to rejection. The trustee argued that the estate was only liable for an administrative claim to the extent that the trustee used the premises and received a benefit from such use. The bankruptcy court allowed the claim and the trustee appealed. The district court affirmed.

On appeal, the trustee argued that the bankruptcy court should have applied Section 503(b)(1) and determined the fair and reasonable value conferred by the lease upon the estate, and granted an administrative claim only for that amount. The Court of Appeals recognized that this was the state of the law prior to the 1984 amendments that added Section 365(d)(3).

■ The Court then examined the legislative history of the 1984 amendments, and concluded that Section 365(d)(3) required the trustee to "perform all obligations" under the lease, and that such obligations were entitled to administrative priority "notwithstanding Section 503(b)(1)." 27 F.3d at 405. In other words, a creditor's claim under Section 365(d)(3) is not limited by the reasonable value limitation of Section 503(b)(1). Therefore, unlike what was required under *Orvco*, a court does not attempt to determine the reasonable value of the premises in order to determine the amount of the claim under Section 365(d)(3).

■ The Debtor points out that the Court in *Pacific–Atlantic* stated "that section 365(d)(3) authorizes administrative status for the unpaid *rent* for the 60–day period." *Id.* (emphasis added). He argues that this language indicates that the lessor is entitled to an administrative claim for unpaid rent only, and that the obligation in question is not truly rent, despite how it was labeled in the lease. This argument raises the issue of whether Section 365(d)(3) should be construed as

granting administrative status to all obligations under the lease, or whether *Pacific–Atlantic* should be read to mean that the administrative claim is limited only to unpaid rent. We reject the Debtor's argument, and refuse to construe *Pacific–Atlantic* or Section 365(d)(3) so narrowly.

Section 365(d)(3) requires the trustee to "perform *all* obligations" under the lease. 11 U.S.C. § 365(d)(3) (emphasis added). By its own language, the Section is not limited to the obligation to pay rent. As one court has stated, " 'all obligations' means just that." *In re MS Freight Distribution, Inc.*, 172 B.R. 976, 979 (Bkrtcy. W.Wash.1994). Indeed, the court in *MS Freight* listed several cases where Section 365(d)(3) was construed to include more than just rent, allowing late fees, interest and attorneys' fees as part of an administrative claim, "provided these amounts are obligations of the debtor under the lease." *Id.* at 978–79.

We further reject the Debtor's position because it essentially asks the court to determine the reasonable rental value of the Property in order to determine if the obligations under the Promissory Note should be treated as rent. As we have explained, this was the practice under *Orvco,* and this practice was rejected in *Pacific–Atlantic.* *See also In re Washington Bancorporation,* 126 B.R. 130 (Bkrtcy. D.D.C.1991) (court is not supposed to make any determination about the reasonableness of the obligation in question, finding that this practice, while required prior to the 1984 amendments, was changed by the enactment of Section 365(d)(3)).

Finally, the *Pacific–Atlantic* Court's reasoning does not suggest that "obligations" under Section 365(d)(3) is limited to rent. The essential holding of that case is that the lessor is entitled to an administrative claim pursuant to Section 365(d)(3) and the amount of that claim is not limited by the reasonableness requirement under Section 503. The Debtor's use of the Property was conditioned, in part, on his satisfying the payment obligations under the Promissory Notes. We AFFIRM the court's order treating the obligations as an administrative claim under Section 365(d)(3).

## B. *Attorneys' Fees Are Included in Administrative Claim*

■ TACI/TACMI argues that pursuant to paragraph 12.2(a) of the lease it is entitled to attorneys' fees and these should be included in its administrative claim. The Debtor argues that under the reasoning in *In re LCO Enterprises, Inc.,* 180 B.R. 567, 570–71 (9th Cir. BAP 1995), TACI/TACMI is not entitled to its fees as part of its administrative claim. In that case, the Panel held that a creditor could not assert a claim for fees incurred in defending a preference action even though an underlying deed of trust contained a fees clause. We acknowledged, however, that "it may be true that attorneys' fees are recoverable if they are linked to litigation seeking to enforce a contract." 180 B.R. at 570. But where the litigation was based wholly upon bankruptcy provisions the fees could not be recovered.

Although this appeal involves a proof of claim in bankruptcy, the actual entitlement to fees is based on rights under state law. Furthermore, while Section 365(d)(3) might operate to limit the amount of the claim entitled to administrative priority, the inclusion of the fees as part of the claim, with or without priority, is not based on provisions of the Bankruptcy Code.

We VACATE the court's order to the extent it denied the claim for fees, and REMAND for further proceedings on the matter. A remand is necessary to allow the court to determine the amount of TACI/TACMI's attorneys' fees that fall under Section 365. As the court in *In re Exchange Resources, Inc.,* 214 B.R. 366, 370 (Bkrtcy.Minn.1997), aptly stated,

[t]he recovery of attorney fees, then, is logically limited to those accrued in legal proceedings to address the breach. These provisions do not authorize a

landlord to retain counsel at the tenant's expense just to monitor the tenant's business operations and options, or to assess the likelihood that the tenant will perform on the lease in the future. Nor do they authorize the landlord to do so to aid the landlord in re-letting the property to a different party after the lease term expires. If a landlord retains counsel under such circumstances, the resultant fees are chargeable to its own general cost of operations; they are in no way chargeable to a tenant that is not in default, absent very specific provisions in the lease.

On remand, the bankruptcy court is directed to determine the amount of fees accrued by TACI/TACMI to address the Debtor's failure to meet its obligations under the lease until the time the lease was rejected.

## C. Administrative Claim Can Include Interest

■ The final issue is whether TACI/TACMI's administrative claim can include interest. TACI/TACMI points out that several cases have allowed interest on such claims. *See, e.g., MS Freight Distribution*, 172 B.R. at 978–79 (and cases cited therein). The Debtor argues that pursuant to *Peaches Records & Tapes, Inc.*, 102 B.R. 193, 196 (9th Cir. BAP 1989), administrative claims do not include interest.

The validity of *Peaches Records* is questionable since it relied in part on the Panel's decision in *In re Mark Anthony Construction, Inc.*, 78 B.R. 260 (9th Cir. BAP 1987), which was subsequently reversed. 886 F.2d 1101, 1106 (9th Cir.1989). *See also, In re Colortex Industries, Inc.*, 19 F.3d 1371, 1379 n. 9 (11th Cir.1994) (criticizing *Peaches Records* on this basis). Indeed, the Ninth Circuit Court of Appeals not only allowed interest on an administrative claim for taxes in *Mark Anthony*, it also allowed interest as part of an administrative claim where the debtor failed to turn over funds that were determined to be held in trust and not property of the

estate. *In re Megafoods Stores, Inc.*, 163 F.3d 1063, 1071–72 (9th Cir.1998).

In any case, we need not determine whether *Peaches Records* is still valid or whether the rule under Section 503(b) is such that TACI/TACMI could have claimed interest under that Section because they never raised that section as a basis for their claim of interest. Instead, their argument focused solely on the scope of Section 365(d)(3).

In looking at the language of Section 365(d)(3) and our earlier analysis set forth above, we find ourselves in agreement with those courts that have allowed interest on delinquent amounts as part of the "obligations" for which the Debtor was responsible during the time he was required to perform. Having said that, we must point out that we are only talking about interest on the overdue rent payments from the date of the petition, November 20, 1992, until the date the lease was deemed rejected, October 30, 1993. Section 365(d)(3) requires timely performance of lease obligations "until such lease is assumed or rejected." Once the lease was rejected, there was no continuing obligation under Section 365(d)(3) and the administrative claim essentially became fixed. *Cf. Colortex Industries*, 19 F.3d at 1384 (interest awarded on trade debt as administrative expense under Section 503(b), but interest stopped accruing once case converted to Chapter 7). Only Section 365(d)(3) was raised as a basis for the claim for interest. Under the facts of this case, there is no basis for allowing interest on the administrative claim after the date of rejection pursuant to that Section.

We recognize there is no clause in the lease calling for interest on delinquent payments. However, under California Civil Code § 3289(b) the Debtor became obligated to pay interest at a rate of 10% on his delinquent obligations under the lease. *See In re Westview 74th Street Drug Corp.*, 59 B.R. 747, 757 (Bkrtcy. S.D.N.Y.1986) (under New York law debtor/tenant required to pay interest on delin-

quent rent; contract silent as to rate of interest so court applied New York law to determine rate). Since this obligation arose as a direct result of the failure of the Debtor to meet his obligations under the lease, we are satisfied that this obligation arose "after the order for relief under the unexpired lease." 11 U.S.C. § 365(d)(3). The court's denial of interest is REVERSED.

## V

### CONCLUSION

We agree with those courts that have applied a literal reading to Section 365(d)(3). That Section is not limited to only rent, and instead it required the Debtor to perform all obligations under the lease. Pursuant to *Pacific–Atlantic*, the obligations designated as additional rent were deserving of administrative claim status. The court's decision to allow those amounts as part of the administrative claim is AFFIRMED.

The court erred when it denied the claims for attorneys' fees and interest arising under the lease. We REVERSE the court on those aspects of its ruling. The court shall allow interest of 10% on those amounts that became delinquent up until the time the lease was deemed rejected.

Finally, we will REMAND to allow the court to determine the appropriate amount of attorneys' fees to be included as part of the administrative claim in light of our opinion.