In re: Moshe Eliezer CUKIERMAN, Debtor.

Moshe Eliezer Cukierman, Appellant,

v.

Susan L. Uecker, Trustee for the Estate of Trans–Action Commercial Mortgage Investors, Ltd.; David L. Bradlow, Trustee for the Estate of Trans–Action Commercial Investors, Ltd.; John T. Kendall, Trustee for the Estate of Moshe Eliezer Cukierman; Linda Ekstrom Stanley, United States Trustee, Appellees.

No. 00–15085.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 2001

Filed Sept. 7, 2001

Stephen D. Finestone, Law Offices of Stephen D. Finestone, San Francisco, California, for the appellant.

Neil W. Bason and Robert Cross, Sideman & Bancroft LLP, San Francisco, California; Kenneth Brown, Pachulski, Stang, Zeihl, Young & Jones, P.C., San Francisco, California, for the appellee.

Before: SCHROEDER, Chief Judge, LAY,* and THOMPSON, Circuit Judges.

SCHROEDER, Chief Judge:

This is an appeal from the Ninth Circuit Bankruptcy Appellate Panel ("BAP") that involves the interpretation of the administrative priority given obligations under a lease of commercial property. *See* 11 U.S.C. § 365(d)(3); *In re Pacific–Atlantic Trading Co.*, 27 F.3d 401, 405 (9th Cir. 1994). The issue is whether obligations denominated in a lease as "further rent" are entitled to priority, even though the obligations actually represent repayments of promissory notes. The bankruptcy court and the BAP both agreed with the landlords' trustees that the obligations were entitled to administrative priority, and the debtor appeals. We affirm on the basis of the statutory language, purpose, history, and the reasoning of our prior decisions. We also deal with the subsidiary issues of administrative priority for attorney's fees and interest.

The debtor and lessee in this case is appellant Moshe Eliezer Cukierman, and the properties in question are two commercial properties in Berkeley, California. In December 1985, he sold the properties to Trans–Action Commercial Investors, Ltd. and Trans–Action Commercial Mortgage Investors, Ltd. ("TACI/TACMI"). Cukierman agreed to "lease and/or operate" the properties and guaranteed certain income to TACI/TACMI. In return, TACI/TACMI issued Cukierman promissory notes totaling $8.5 million, secured by deeds of trust on the properties.

After a dispute arose over the rights and responsibilities of the parties under the sale agreement, the parties entered into a settlement agreement that restructured the underlying transaction. As part of this restructuring, Cukierman entered into a new lease of the properties and borrowed $600,000 from TACI/TACMI through two promissory notes. In the new lease agreement of June 1988, Cukierman agreed to pay TACI/TACMI rent of $400,000 per year. Critical to this litigation, the lease includes a provision requiring Cukierman to pay TACI/TACMI as "further rent" monthly sums that match Cukierman's repayment obligations on the promissory notes. For purposes of this appeal, it is not disputed that the "further rent" provision in fact represents the repayment of the promissory notes.

No "further rent" payments were due before October 1, 1992. On November 20, 1992, Cukierman filed for bankruptcy under Chapter 11 of the Bankruptcy Code. As debtor-in-possession, he moved to assume the lease, but the bankruptcy court denied the motion in November 1993. This amounted to a rejection of the lease, so the debtor's obligations under the lease ceased at that point. The case was converted to Chapter 7 in March 1994.

TACI/TACMI filed a proof of claim in October 1994 that included all of the unpaid "further rent" obligations that accrued between the time the bankruptcy

---

* Honorable Donald Lay, Circuit Judge, Eighth Circuit Court of Appeals, sitting by designa-tion.

petition was filed and the time of the rejection of the lease. Those amounts, representing approximately $70,000, were labeled as an administrative claim under § 365(d)(3), and thus, according to TACI/TACMI, were entitled to administrative priority. Cukierman contended in the bankruptcy court, as he does here, that there should be no administrative priority, because the obligation to pay "further rent" was not in fact an obligation arising out of Cukierman's use of the real property. The bankruptcy court rejected his argument, and the BAP affirmed in a published opinion. *See In re Cukierman*, 242 B.R. 486 (B.A.P. 9th Cir.1999).

Cukierman appeals to this court. Because TACI and TACMI have also gone into bankruptcy proceedings, the appellees include the trustees for the TACI and TACMI estates.

## LEGAL ANALYSIS

### A. "Further Rent"

Section 365 of the Bankruptcy Code authorizes the bankruptcy trustee to assume or reject contracts which are executory and certain leases which have not yet expired. *See* 11 U.S.C. § 365; 3 *Collier on Bankruptcy* ¶ 365.01 (Lawrence P. King ed., 15th ed. rev.2000). Section 365(d) specifies the time within which the trustee must decide whether to assume or reject such contracts and leases. In a case brought under Chapter 11, an unexpired lease of nonresidential real property is deemed rejected and the trustee must im-

mediately surrender the property if the trustee does not assume or reject the lease within sixty days after the date of the order for relief, unless the bankruptcy court grants additional time. *See* 11 U.S.C. § 365(d)(4). Until the trustee assumes or rejects an unexpired lease of nonresidential real property, the trustee must perform obligations under that lease in accordance with 11 U.S.C. § 365(d)(3). Because this was a Chapter 11 case at the relevant time, Cukierman, as debtor-in-possession, had the duties of a trustee. *See* 11 U.S.C. § 1107(a). Section 365(d)(3) reads, in relevant part, as follows:

> The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period.

11 U.S.C. § 365(d)(3).

■ The Bankruptcy Code grants first priority among unsecured claims to administrative expenses allowed under § 503(b). 11 U.S.C. § 507(a)(1). Such expenses include "the actual, necessary costs and expenses of preserving the estate...." 11 U.S.C. § 503(b)(1)(A).[1] Section 503(b)(1)

1. 11 U.S.C. § 503(b)(1) reads:

> After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—
> (1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services

rendered after the commencement of the case;
> (B) any tax—
> (i) incurred by the estate, except a tax of a kind specified in section 507(a)(8) of this title; or
> (ii) attributable to an excessive allowance of a tentative carryback adjustment that the estate received, whether the taxable year to

limits administrative expenses to the fair and reasonable value of the debtor's actual use of leased property. *In re Dant & Russell, Inc.,* 853 F.2d 700, 707–08 (9th Cir.1988).

■ We have held that claims arising under § 365(d)(3) are entitled to administrative priority even when they may exceed the reasonable value of the debtor's actual use of the property. *See Pacific–Atlantic,* 27 F.3d at 405. We did so because the "notwithstanding section 503(b)(1)" proviso exempts the amount of lease obligations that a trustee must timely pay under § 365(d)(3) from § 503(b)(1)'s limitation of administrative expenses to the fair value of the debtor's use of the property. *Id.* When the trustee fails to pay an obligation, the amount accorded administrative priority is similarly not subject to the § 503(b)(1) limitation. *Id.* We reasoned that to hold otherwise would reward trustees for failing to perform lease obligations, a result entirely at odds with § 365(d)(3)'s purpose of ensuring prompt payment for landlords. *Id.*

Cukierman's position here is more sympathetic than that of the trustee in *Pacific–Atlantic.* In *Pacific–Atlantic,* the bankruptcy trustee argued that because he was not using the leased premises, the rental rate that the debtor and landlord had negotiated did not represent the fair value of the premises used. The trustee argued that the obligation to pay the rental rate was therefore not entitled to administrative priority. We held that the contractual rate of rent, rather than any measure of the value of the trustee's actual use of the property, was entitled to administrative priority under § 365(d)(3). *Id.*

This case is different in that the parties have apparently used the lease agreement as a vehicle for Cukierman's repayment of outside obligations. The obligation to pay "further rent" is arguably completely unrelated to Cukierman's use of the property.

The connection between the "further rent" payments and Cukierman's use of the property, or between the payments and the value of the property, might be relevant to the question of whether or not the lease is a "true" or "bona fide" lease covered by § 365(d)(3). *See In re Moreggia & Sons, Inc.,* 852 F.2d 1179, 1182–86 (9th Cir.1988) (holding that a city's lease of market stalls was not a true lease subject to § 365(d)(4)); *In re PCH Assocs.,* 804 F.2d 193, 198–201 (2d Cir.1986) (holding that a sale-leaseback arrangement did not constitute a true lease within the scope of § 365(d)(3)). Cukierman does not, however, contend that this is not a true lease. His argument is that his obligation to pay "further rent" under the lease does not fall within the scope of § 365(d)(3).

■ The question before us, then, is whether Cukierman's obligation to repay the promissory notes is an obligation covered by § 365(d)(3), where that obligation is included in a lease agreement. We conclude that regardless of whether this obligation is related to Cukierman's use of the premises, the lease obligation enjoys the administrative status conferred by § 365(d)(3).

■ Congress made the provision for trustee compliance broad, extending it to cover all the obligations under a lease. A broad interpretation of this provision is consistent with the purpose of § 365(d)(3), which is to ensure immediate payment of lease obligations so that the landlord is not

which such adjustment relates ended before or after the commencement of the case; and

(C) any fine, penalty, or reduction in credit relating to a tax of a kind specified in subparagraph (B) of this paragraph; . . . .

left providing uncompensated services. This purpose is evident from the legislative history of the section, which was added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984). Upon submitting the conference report for the bill containing § 365(d)(3), Senator Hatch observed that when the trustee stops making payments to the landlord for such items as rent and common area charges, the landlord is out of pocket the value of services it must continue to provide:

> [T]he landlord is forced to provide current services—the use of its property, utilities, security, and other services-without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor.

130 Cong. Rec. S8887, 8895 (daily ed. June 29, 1984) (statement of Sen. Hatch), *reprinted in* 1984 U.S.C.C.A.N. 576 [2].

According to Senator Hatch, the purpose of § 365(d)(3) is to ensure that landlords continue to receive payment for lease obligations. This purpose would be frustrated if we were to hold, as Cukierman urges, that § 365(d)(3) applies only to obligations that are related to the use of the premises or that constitute "rent" as we have interpreted the term in other sections of the Bankruptcy Code. Under such a rule, landlords would not be paid immediately. Acting either in good-faith uncertainty about the contours of such a rule or in a bad-faith effort to evade their contractual responsibilities, trustees would have an incentive to withhold performance of lease obligations. Such trustees would be motivated by the hope that the bankruptcy court would subsequently exclude the obligation from the reach of § 365(d)(3). This potential for dispute and delay would defeat § 365(d)(3)'s purpose of ensuring that trustees promptly perform lease obligations. *Cf. Pacific–Atlantic*, 27 F.3d at 405 (rejecting an interpretation of § 365(d)(3) that would potentially reward trustees for failing to timely perform lease obligations).

The bankruptcy trustee has primary responsibility for administering § 365(d)(3). For that section to function properly, bankruptcy trustees must know which lease obligations they are required to perform in a timely fashion.

Interpreting § 365(d)(3) as a bright-line rule, encompassing all obligations contained in a bargained-for agreement, ensures prompt performance of lease obligations by bankruptcy trustees. The simplicity of this rule prevents delays and disputes caused by uncertainty over whether the provision applies to any given lease obligation. If the trustee fails to perform a lease obligation, the plain meaning of § 365(d)(3) serves to eliminate disputes over whether the claim arising from that nonperformance is entitled to administrative priority, and thus advances the interest of resolving bankruptcy cases expeditiously. *See In re Town & Country Home Nursing Servs., Inc.*, 963 F.2d 1146, 1155 (9th Cir.1991).

We therefore conclude that Cukierman's position must be rejected. Because Cukierman's obligation to pay "further rent" was an obligation under an unexpired lease of nonresidential real property, it is an obligation that he was required to perform pending the assumption or rejection of the lease. *See* 11 U.S.C. § 365(d)(3). TACI/TACMI's claim to the unpaid portion of that obligation is entitled to administrative priority under the rule we set

**2.** No Senate Report or House Report accompanied the legislation, nor did the House Conference Report contain a Joint Explanatory Statement. *See* 1984 U.S.C.C.A.N. 576.

forth in *Pacific–Atlantic. See Pacific–Atlantic,* 27 F.3d at 405.

## B. Attorney's Fees

■ The lease at issue in this case entitles the prevailing party to attorney's fees incurred in litigation to enforce the lease. The relevant provision reads as follows:

> If either party shall bring an action or proceeding against the other party to enforce the terms of this Lease or to declare their respective rights hereunder, the prevailing party in any such action, proceeding, trial or appeal thereof, shall be entitled to its reasonable attorney's fees and court costs to be paid by the losing party as fixed by the court as part of the judgment in said action or proceeding.

The question before us is whether the obligation to pay attorney's fees under this provision is entitled to administrative priority under § 365(d)(3).

The bankruptcy court held that the attorney's fees incurred prior to the rejection of the lease were not entitled to administrative priority. The BAP reversed, holding that attorney's fees under this lease provision fall within the scope of § 365(d)(3). *In re Cukierman,* 242 B.R. at 490–91. The BAP remanded for the bankruptcy court to determine the amount of fees incurred by TACI/TACMI to redress Cukierman's nonperformance of his obligations under the lease until the time the lease was rejected. *Id.*

The BAP may have correctly concluded that an obligation to pay attorney's fees can arise directly out of a lease obligation, and therefore become subject to the requirement of immediate payment under § 365(d)(3). *See In re MS Freight Distribution, Inc.,* 172 B.R. 976, 978–79 (Bankr. W.D.Wash.1994). *But see In re Pudgie's Dev. of NY, Inc.,* 202 B.R. 832, 837 (Bankr. S.D.N.Y.1996) (declining to interpret § 365(d)(3) to cover attorney's fees). We

do not reach that issue because we conclude that the BAP erred in holding that the particular provision for attorney's fees in this lease could give rise to an obligation that falls within the scope of § 365(d)(3).

Section 365(d)(3) applies only to obligations that arise under a lease "until [it] is assumed or rejected." According to the provision for the payment of attorney's fees in the lease in this case, there was no obligation to pay fees at the time the lease was rejected. As of that time, no action or proceeding had been brought to enforce the terms of the lease or to declare the parties' respective rights, and no judgment had been entered determining who was the prevailing party and fixing the amount of attorney's fees, all of which, according to the lease, are pre-conditions to the obligation to pay attorney's fees.

The reported cases in which attorney's fees were accorded administrative priority under § 365(d)(3) involved lease agreements under which the delinquent lessee was obligated to pay the lessor's attorney's fees on demand as the fees were incurred. *See In re Exchange Resources, Inc.,* 214 B.R. 366, 369–70 (Bankr.D.Minn.1997); *In re Pacific Sea Farms, Inc.,* 134 B.R. 11, 15–16 (Bankr.D.Haw.1991); *In re Revco D.S., Inc.,* 109 B.R. 264, 273 (Bankr. N.D.Ohio 1989). The lease agreement in this case is different.

Because the contractual obligation to pay attorney's fees had not arisen at the time the lease was rejected, we will not accord § 365(d)(3) administrative priority to the payment of those fees.

## C. Interest

■ TACI/TACMI seeks to include in its administrative claim interest on Cukierman's overdue lease obligations. The bankruptcy court denied administrative priority to interest. Observing that California Civil Code § 3289(b) obligates Cukierman to pay interest at a rate of ten

percent on his delinquent obligations, the BAP reversed, holding that TACI/TAC-MI's claim for interest is entitled to administrative priority. We disagree, because the entitlement to interest is created by statute and not by the lease. Section 365(d)(3) is limited to "all the obligations of the debtor ... under any unexpired lease of nonresidential real property." TACI/TACMI's claim for interest on Cukierman's unpaid lease obligations is not entitled to administrative priority under § 365(d)(3) because it is not an obligation under the lease.

## CONCLUSION

We AFFIRM the BAP's grant of administrative priority to TACI/TACMI's claim arising from Cukierman's unpaid "further rent." We REVERSE the BAP's order to remand to the bankruptcy court for a determination of the amount of attorney's fees and interest entitled to administrative priority. We REMAND to the BAP for the entry of an order affirming the decision of the bankruptcy court in its entirety.