**In re ROBERDS, INC., Debtor.**

No. 00–30194.

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

Dec. 19, 2001.

Nick V. Cavalieri, Arter & Hadden LLP, Columbus, OH, Robert Berner, Dayton, OH, for Roberds, Inc.

Michael C. Hammer, Dawn Copley, Detroit, MI, for Kmart Corporation.

**DECISION ON ORDER CONCERNING ALLOWANCE OF ADMINISTRATIVE CLAIM; DENYING KMART CORPORATION SUMMARY JUDGMENT AND GRANTING ROBERDS, INC. SUMMARY JUDGMENT**

THOMAS F. WALDRON, Chief Judge.

The issue in this proceeding is the extent of the allowance of an administrative

claim for post-petition rent related to non-residential real property in which Roberds, Inc. (the "Debtor") was the sublessee and Kmart Corporation ("Kmart") was the sublessor. The parties agree the lease required the full monthly rent to be paid on the first day of each month. The parties stipulate that the lease was rejected August 31, 2000 and the Debtor vacated the property on September 18, 2000. Under such circumstances, the parties dispute whether the Debtor is obligated to pay the full monthly rent for September of 2000 or a pro rata amount of the monthly rent for the eighteen days in September, 2000 during which the Debtor occupied the premises. The court concludes the Debtor is required to pay an administrative rent claim only for the period the Debtor occupied the premises.

### Factual and Procedural Background

The following facts were stipulated to by the parties in a document captioned "Stipulation of Facts Regarding the Cross–Motions for Summary Judgment Filed on Behalf of Kmart Corporation's Application for an Administrative Expense and the Debtor's Objection [Doc. 1124–1]." On January 19, 2000, the Debtor filed a voluntary petition under Chapter 11 of Title 11, United States Code. Prior to the filing of the petition, Debtor (as sublessee) and Kmart (as sublessor) entered into a sublease for non-residential real property located in Gainesville, Georgia (the "lease"). On June 2, 2000, Kmart filed a Proof of Claim. On August 3, 2000, the court entered an order granting Debtor's "Motion to Reject Valueless Leases Upon Five Days Written Notice, Effective August 31, 2000 [Doc. 637–1]." The Debtor filed a notice of rejection of real property effective August 31, 2000 [Doc. 671–1]. Debtor vacated the property on September 18, 2000.

Kmart filed an Amended Proof of Claim on September 27, 2000. The Debtor filed an objection to the Amended Proof of Claim on January 11, 2001 [Doc. 898–1]. The Debtor objected to, among other things, the inclusion of the pro rata portion of rent for September 19 through September 30, 2000. On February 20, 2001, Kmart filed a further Amended Proof of Claim. The parties stipulate Section Two of the lease between the parties requires the monthly rent to be paid on the first of each month. The parties stipulate that the Debtor paid a pro rata share of monthly rent for the time in September before it completely vacated the premises on September 18, 2000. The parties agree that, without including the disputed rent claim, Kmart's administrative claim totals $93,779.98. The administrative claim includes unpaid rent, insurance and common area maintenance (CAM) charges for February, April and May of 2000 and a "Prorated tax reconciliation."

In order to resolve this issue, an agreed order provided both parties adequate time to complete discovery, file motions for summary judgment, any responses and legal memoranda in support [Doc. 1087–1]. The parties have filed cross motions for summary judgment [Docs. 1046–1, 1123–1].

### Jurisdiction

This court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (O).

### ISSUE

The limited question before the court is whether the Debtor, having rejected the Kmart lease under 11 U.S.C. § 365 before the September rent was due, is obligated to pay rent for the entire month of September, because the Debtor occupied the

premises for the first eighteen days in September.

## Analysis

### Koenig Decision Not Controlling

■ Both parties rely on *Koenig Sporting Goods, Inc v. Morse Road Co. (In re Koenig Sporting Goods, Inc.)* 203 F.3d 986 (6th Cir.2000), and an analysis of that decision is relevant; however, *Koenig* does not control the resolution of the issue in this proceeding. In *Koenig*, the Sixth Circuit Court of Appeals was faced with determining provisions of 11 U.S.C. § 365(d)(3), which states:

> The trustee shall timely perform all the obligations of the debtor * * * arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed and rejected, notwithstanding section 503(b)(1) of this title. * * * *

In *Koenig*, the debtor rejected a lease on December 2, 1997, and vacated the property the same day. *Id.* at 988. The lease required monthly rent to be paid in full on the first day of month. *Id.* at 987. The debtor argued it was only required to pay rent on a pro rata basis for the two days of month before the lease was rejected and the premises vacated. *Id.* at 988. The court rejected this argument and determined the debtor was obligated to pay the rent for the entire month of December. *Id.* at 989. The court stated:

> The purpose of § 365(d) is to "prevent parties in contractual or lease relationships with the debtor from being left in doubt concerning their status vis-a-vis the estate.'" * * * The legislative history also suggests that the purpose was "to relieve the burden placed on nonresidential real property lessors or ('landlords') during the period between a tenant's bankruptcy petition and the assumption or rejection of a lease."

Under the terms of the lease the debtor was obligated to pay Morse $8,500 in advance on the first of each month for that month's rent. The specific obligation to pay rent for December 1997 arose on December 1, which was during the post-petition, pre-rejection period. Under these circumstances, § 365(d)(3) is unambiguous as to the debtor's rent obligation and requires payment of the full month's rent.

> The debtor argues that policy considerations, equity, and "common sense" compel the adoption of the proration method in this context. We disagree. The debtor alone was in the position to control Morse's entitlement to payment of rent for December. *If the debtor had rejected the lease effective November 30, 1997, rather than December 2, it would not have been obligated to pay rent for December 2, one day after the debtor's monthly rent obligation would arise.* In this case, involving a month-to-month, payment-in-advance lease, where the debtor had complete control over the obligation, we believe that equity as well as the statute favors full payment to Morse. * * * * (citations omitted) (Italics in original; Underlining Added)

*Id.*

Under *Koenig*, a debtor must pay all rent due under the terms of a month to month lease in the post-petition, pre-rejection period if the debtor fails to reject the lease prior to the first day of the month. See also *Centerpoint Props. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 268 F.3d 205 (3rd Cir.2001) (tax payments arising in the post-petition, pre-rejection period must be paid in full). The court recognizes that unlike the lease between the Debtor and Kmart, the lease in *Koenig* was rejected and the premises vacated the same day;

however, *Koenig* focuses on the date of rejection, not the date the premises are vacated. The *Koenig* analysis does not address the post-rejection occupation of a leased premises by a debtor because, as further discussed below, the statutory basis for *Koenig*, § 365(d)(3), does not apply post-rejection. Once the lease is rejected, the contractual terms of the lease no longer obligate a debtor.

■ To the extent Kmart argues a debtor can avoid the full month rent payment found to be required in *Koenig* only by an immediate surrender of the premises after rejection, the *Koenig* analysis does not support Kmart's argument, since the Sixth Circuit based its decision on the plain meaning of § 365(d)(3) and not an equitable analysis of the relationship between lessors and debtors/lessees in connection with the concept of vacating a leased premises. The court does note that, by rejecting the lease, a debtor faces immediate consequences that are already addressed by Code provisions and other authority. The choice to assume and assign the lease for the benefit of estate is lost. The lease is no longer property of the estate and the debtor is liable for lease rejection damages. *In re Damianopoulos*, 93 B.R. 3, 6 (Bankr.N.D.N.Y.1988); See 11 U.S.C. § 502(b)(6) (defining the limit for an allowed claim for lease rejection damages). The lessor can market or re-lease the property to any potential lessee. Additionally, if the debtor fails to vacate non-residential real property to the lessor after a lease is rejected, the lessor has remedies available. The majority rule allows the lessor to seek an order from the bankruptcy court to have the debtor promptly vacate the premises. *Anderson v. Elm Inn, Inc. (In re Elm Inn, Inc.)*, 942 F.2d 630, 634 (9th Cir.1991); *Wages v. Peach Auto Painting & Collision, Inc. (In re Peach Auto Painting & Collision, Inc.)*, 2001 WL 1002419 (Bankr.M.D.Ga. March 29, 2001), although the minority rule requires the lessor to seek relief from stay in order to pursue state law remedies for eviction of a debtor. *Id.* The *Koenig* decision does not provide a basis for either party to prevail.

### *11 U.S.C. § 365(d)(3) Not Applicable*

■ In addition to its analysis of *Koenig*, Kmart separately relies on 11 U.S.C. § 365(d)(3) in support of its position; however, the facts in this proceeding render § 365(d)(3) inapplicable. The language of Section 365(d)(3), which addresses the timely performance of all obligations of a debtor, provides that it only applies "until such lease is assumed or rejected" by the debtor (or deemed rejected by provisions of § 365(d)(4)). By its own wording, at the time the lease is rejected, § 365(d)(3) no longer applies. In the Sixth Circuit, if the plain meaning of the statute is clear and unambiguous, the court's inquiry into its meaning is at an end. See *Koenig* at 988 (citations omitted) ("Our interpretation of legislative acts is limited, for '[i]f the statutory language is unambiguous, in the absence of a clearly expressed legislative history to the contrary, that language must ordinarily be regarded as conclusive.' ")

The court is not aware of any decision, reported or unreported, holding that § 365(d)(3) applies in the *post-rejection* period. As a result of the wording of § 365(d)(3), a rejected lease does not govern the obligations of a debtor to pay rent in the post-rejection period. Although the lease had required the entire September rent to be paid on September 1, 2000, the lease was rejected effective August 31, 2000. Accordingly, at the time the September rent became due under Section Two of the lease, the debtor was not obligated under that rejected lease to pay the September rent. See *Cukierman v. Uecker (In re Cukierman)*, 265 F.3d 846, 852

(9th Cir.2001) ("Section 365(d)(3) applies only to obligations that arise under a lease 'until [it] is assumed or rejected.'") Section 365(d)(3) does not support Kmart's position.

### 11 U.S.C. § 365(d)(4) Not Applicable

Kmart relies on its analysis of § 365(d)(4) to conclude that the Debtor must have both rejected the lease and vacated the premises prior to September 1, 2000, or the Debtor became liable for rent for the entire month of September. 11 U.S.C. § 365(d)(4) states that:

> Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is a lessee within 60 days after the date of order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential property to the lessor.

Initially, the court notes § 365(d)(4) addresses the failure of a debtor to assume or reject a lease within the sixty day time period from the filing of the bankruptcy petition, or within any additional time granted by bankruptcy court, and results in an automatic rejection of the lease. These are not the factual circumstances in this proceeding, since the Debtor rejected this lease within the "additional time" provided by court. See "Order Granting Motion Extending Time to Assume, Assume and Assign or Reject Unexpired Nonresidential Real Property Leases" [Doc 228–1]. Kmart's argument would render meaningless the phrase in § 365(d)(4) "if the trustee does not assume or reject an unexpired lease," and is contrary to the Stipulations in this proceeding.

Kmart, nevertheless, asserts the "immediately surrender" provision in § 365(d)(4) is equally applicable in § 365(d)(3) circumstances; however, the language concerning the obligation of the debtor/lessee to "immediately surrender" the premises, which is present in § 365(d)(4), is notably absent in § 365(d)(3). Such a Congressionally created distinction between the language in § 365(d)(4) and § 365(d)(3) must be recognized, not ignored, by the court, which is constrained from applying a specific § 365(d)(4) provision concerning "immediately surrender" into § 365(d)(3) when Congress chose not to do so. The failure to "immediately surrender" the premises after a debtor rejects a lease may create an administrative rent claim and other consequences for a debtor; however, it does not impose upon the Debtor liability for an entire month's rent. Section 365(d)(4) does not support Kmart's position.

### Kmart is Entitled to an Administrative Claim for Pro Rata Rent for September

The appropriate provision for determining the rent claim of Kmart is 11 U.S.C. § 503(b)(1)(A), which governs an administrative expense for "the actual, necessary costs and expenses of preserving the estate." In the circumstances of this proceeding, § 503(b)(1)(A) governs the determination of post petition rent owed to a lessor for the period after rejection of the lease until the property is vacated. An administrative claim (1) must have arisen from a post-petition transaction with the estate and (2) "directly and substantially benefitted the estate." *PBGC v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811, 816 (6th Cir.1997); *United States v. Schottenstein, Zox and Dunn (In re Unitcast, Inc.)*, 219 B.R. 741, 746 (6th Cir. BAP 1998). The parties stip-

ulated to $93,779.98 as an allowed administrative claim. The parties stipulated the pro rata rent for September 1st through 18th has been paid. See *In re Cardinal Indus., Inc.*, 109 B.R. 738 (Bankr.S.D.Ohio 1989) (post-rejection rent for period debtor occupied formerly leased premises allowed as an administrative claim); *In re Homeowner's Outlet Mall Exchange, Inc.*, 89 B.R. 965 (Bankr.S.D.Fla.1988) (similar). The estate received no discernable benefit after it vacated the premises on September 18, 2000 and any administrative claim for rent after that date must be denied. See *White Plains v. A & S Galleria Real Estate, Inc. (In re Federated Dep't Stores, Inc.)*, 270 F.3d 994, 1000 (6th Cir.2001) ("Claims for administrative expenses under § 503(b) are strictly construed because priority claims reduce the funds available for creditors and other claimants.")

### *Conclusion*

The motion for summary judgment of Kmart is denied. The motion for summary judgment of the debtor is granted. Based on the stipulations of the parties, Kmart is allowed $93,779.98 as an administrative claim.

This determination resolves all issues in this proceeding. The order in accordance with the decision, which is to be simultaneously entered, will be entered pursuant to the provisions of Federal Rule of Bankruptcy Procedure 7054 upon an express determination that there is no just reason for delay

**SO ORDERED.**