## In re EASTERN AGRI–SYSTEMS, INC., Debtor.

### No. 99–06283–8–JRL.

United States Bankruptcy Court,
E.D. North Carolina,
Wilson Division.

Oct. 30, 2000.

Trawick H. Stubbs, Jr., Stubbs & Perdue, P.A., New Bern, NC, for plaintiff.

Algernon L. Butler, Jr., Butler & Butler, Wilmington, NC, for defendant.

## *ORDER*

J. RICH LEONARD, Chief Judge.

This converted chapter 7 case is before the court on a Motion for Allowance and Payment of Lease Rejection Claim as Administrative Priority Claim under 11 U.S.C. §§ 503 and 365 filed by Financial Pacific Leasing, LLC ("FPL"). A hearing was held on August 15, 2000 in Wilmington, North Carolina.

## Facts

On April 15, 1999, the debtor entered into a lease agreement with Financial Pacific Company that obligated the debtor to make sixty monthly payments of $770.19 for the lease of a 1030G Hobbes Reel and a John Deere Pump with Rainbow. The first payment under the lease was due on May 15, 1999, and the lease was to expire by its terms on May 15, 2004. Financial Pacific Company subsequently assigned the lease to FPL.

The debtor filed a petition for relief under chapter 11 of the Bankruptcy Code on October 21, 1999. The debtor was three months in default on the petition date, having made no lease payments to FPL since July of 1999. After filing chapter 11, the debtor retained possession of the leased property, but made no payments to FPL and took no action to assume or reject the lease. It is undisputed that the debtor did not operate in chapter 11 and did not use the leased equipment after the petition was filed.

The debtor's case was converted to chapter 7 on February 4, 2000, and FPL filed a motion on February 7 seeking an order requiring the debtor to assume or reject the unexpired lease. On June 21, 2000, the court entered an order deeming the lease rejected and directing FPL to file an Amended Proof of Claim for lease payments "arising or occurring after sixty (60) days of the order for relief in the case, said date being December 20, 1999, and continuing until the date that this Order is entered as is consistent with 11 U.S.C. § 365(d)(10)," as well as for "any deficiency balance remaining . . . ."

FPL filed a proof of claim in the amount of $51,376.85 on July 14, 2000. A week later, on July 21, 2000, FPL filed the present motion asking that the amount stated in its proof of claim be allowed as a general unsecured claim of $50,156.66 and an administrative expense claim in the amount of $1,220.19, representing post-petition lease payments due for the period between December 20, 1999 and February 4, 2000. The trustee does not dispute the gross amount sought by FPL, but does object to the allowance of any portion of FPL's claim as an administrative expense.

## Discussion

The trustee makes two arguments in support of his objection. His primary argument rests on § 348(d), which provides that chapter 11 administrative expenses specified in § 503(b) retain priority status in a converted chapter 7 case. Here, the leased equipment was never used by the chapter 11 debtor, allowing the trustee to argue that the post-petition lease payments to FPL cannot become a priority claim in the converted case because they are not afforded priority by § 503(b). In the alternative, the trustee argues that the fact that the debtor gained no benefit from the FPL lease is an equitable consideration that may be used under § 365(d)(10) to deny administrative status to the post-petition lease payments.

Both of the trustee's arguments turn on § 365(d)(10), which was added to the Code in 1994 to protect the interests of equipment lessors in chapter 11 cases. In pertinent part, § 365(d)(10) provides that:

> [t]he trustee shall timely perform all of the obligations of the debtor . . . first arising from or after 60 days after the order for relief in a case under chapter 11 . . . under an unexpired lease of personal property (other than personal property leased to an individual primarily for personal, family, or household purposes), until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise . . . .

11 U.S.C. § 365(d)(10). Before the addition of this section, the Code allowed debtors "an unspecified period of time to determine whether to assume or reject a lease of personal property." H.R.Rep. No. 103–835, at 50 (1994), U.S.Code Cong. & Ad-

min.News 1994, pp. 3340, 3359. Pending this decision, which could be made at the debtor's leisure, lessors were forced to petition the court to require the debtor/lessee to make lease payments, which were available only to the extent that the lessee's use of the property actually benefitted the estate. *Id.*

Section 365(d)(10) responded to Congress's concern that this procedure was unduly burdensome on lessors of personal property by shifting to the debtor the burden of bringing a motion to assume or reject the lease. Section 365(d)(10) accomplishes this by requiring the debtor to "timely perform" all obligations under the lease arising on or after 60 days after the order for relief. The duty to timely perform continues until the lease is assumed or rejected unless the court orders otherwise after notice and a hearing. The 60–day gap after the order for relief is intended to give the debtor "breathing space" to make orderly decisions regarding assumption or rejection.

■ Section 365(d)(10) is patterned on § 365(d)(3), the analogous section applicable to leases of nonresidential real property. Both sections impose a duty of timely performance on debtor/lessors, and both expressly specify that this duty exists "notwithstanding section 503(b)(1)" of the Code.[1] The duty to timely perform under the lease requires the debtor to comply with all obligations under the lease, including payment of rent in the amount specified in the agreement. *See, e.g., In re Kyle Trucking, Inc.*, 239 B.R. 198 (Bankr. N.D.Ind.1999). This duty is independent of § 503(b)(1), indicating that the debtor is contractually obligated even if the lease payments are not "actual, necessary costs

and expenses of preserving the estate."[2] It follows that the debtor remains responsible under §§ 365(d)(3) and (10) even if the leased property is never used and is of no benefit to the estate.

Sections 365(d)(3) and (10) are silent on consequences of the debtor's failure to timely perform. A number of decisions have addressed this issue under § 365(d)(3), and the majority rule under that section grants the lessor "automatic administrative expense treatment for the amount called for by the lease." 3 LAWRENCE P. KING, COLLIER ON BANKRUPTCY § 365.04[3][f] (2000). *See, e.g., Towers v. Chickering & Gregory (In re Pacific–Atlantic Trading Co.)*, 27 F.3d 401 (9th Cir.1994).

■ Although fewer cases have been decided under § 365(d)(10), the developing majority rule tracks § 365(d)(3) and allows the lessor an administrative expense claim for unpaid rent covered by the duty of timely performance. *See In re The Elder–Beerman Stores Corp.*, 201 B.R. 759 (Bankr.S.D.Ohio 1996); *Kyle Trucking, supra.* Decisions under both sections make it clear that this administrative expense claim arises directly under § 365(d) and, as specifically stated in that statute, is independent from § 503(b)(1). *Pacific–Atlantic Trading Co.*, 27 F.3d at 405; *In re Russell Cave Co.*, 247 B.R. 656 (Bankr. E.D.Ky.2000); *Omni Partners L.P. v. Pudgie's Dev. of N.Y., Inc.*, 239 B.R. 688 (S.D.N.Y.1999). Thus, the lessor is entitled to an administrative expense claim even if the leased property was of no benefit to the estate. *See Geonex Corp. v. Norritech (In re Geonex Corp.)*, No. 97–1225, 1997 WL 471105, at *3 n. 2 (4th Cir. Aug.19 1997) ("Conditioning the validity of

---

1. Despite these similarities, there are several significant differences between the two sections. Section 365(d)(10) only applies in chapter 11 cases, while § 365(d)(3) is not limited by chapter. In addition, the debtor's duty to timely perform under § 365(d)(3) is triggered by the order for relief, whereas § 365(d)(10) frees the debtor from this duty for the first 60 days after the order for relief.

2. Post-petition claims for rent that are "actual, necessary costs and expenses of preserving the estate" may also be administrative expenses under § 503(b)(1). *See, e.g., Devan v. Simon DeBartolo Group, L.P. (In re Merry–Go-Round Enters., Inc.)*, 180 F.3d 149 (4th Cir. 1999).

an administrative claim for post-petition rent under 11 U.S.C. § 365(d)(3) on a showing that the bankruptcy estate derived benefit from the lease contravenes the plain language of the Bankruptcy Code.").

■ These rules comfortably support the conclusion that FPL would have an administrative expense claim under § 365(d)(10) for unpaid rents accruing from and after 60 days of the petition date had this remained a chapter 11 case. The twist in the present facts is provided by the fact that the case converted to chapter 7, triggering the application and effects of § 348(d).

Section 348(d) governs the characterization of claims that arise after the order for relief, but before conversion, in cases that are converted under §§ 1112, 1208, or 1307. With the exception of claims "specified in § 503(b)," claims arising in the post-petition, pre-conversion gap are "treated for all purposes as if [they] had arisen immediately before the date of the filing of the petition." 11 U.S.C. § 348(d). The claims specified in § 503(b)—the administrative expenses of the reorganizing debtor—remain priority claims under § 507(a)(1), but are subordinated to post-conversion administrative expenses by § 726(b).

Here, it is undisputed that the debtor-in-possession never used the equipment leased from FPL. It follows that FPL's claim arises solely under § 365(d)(10), and that it has no claim to administrative rent under § 503(b)(1). And, because FPL's claim is not of the sort specified in § 503(b), the trustee correctly argues that the literal language of § 348(d) operates to change the character of the claim, requiring it to be treated as a pre-petition, unsecured claim.

Nevertheless, despite a diligent search, neither the parties or the court have uncovered any decision addressing or even considering the trustee's argument. Instead, most of the reported decisions focus on fashioning an appropriate remedy for a lessor harmed by the debtor's failure to "timely perform" in the manner required by §§ 365(d)(3) and (10). *See, e.g., Cukierman v. Uecker (In re Cukierman),* 242 B.R. 486 (9th Cir. BAP 1999); *In re Amber's Stores,* 193 B.R. 819 (Bankr.N.D.Tex. 1996). As discussed above, these decisions are careful to distinguish § 365(d) claims from claims arising under § 503(b)(1), emphasizing when relevant that claims arising under § 365(d) must be paid as administrative expenses even when the debtor derived no benefit from the leased property.

These decisions imply that §§ 365(d)(3) and (10) elevate rent claims above § 503(b) by creating an entitlement, not just to payment, but to actual performance under the lease. This interpretation is consistent with the legislative history of § 365(d)(10), which clearly states Congress's intent to give special protection to qualifying lessors. There is no indication that Congress considered the impact of § 348(d) when enacting either §§ 365(d)(3) or (d)(10), and no reason to suspect that Congress intended to give lessors less favorable treatment under these sections in converted cases. Thus, the court is placed in the awkward position of resolving an apparent conflict between the literal language of the Code and the clear intent of Congress as expressed in legislative history.

After careful consideration, the court finds that the best solution on the present facts is to allow FPL an administrative claim under § 365(d)(10) for post-petition rent in the amount requested. If the trustee's argument were accepted, § 365(d)(10) would become a nullity in converted cases. Congress has given no indication that it wishes to treat equipment lessors differently in converted cases and, absent some expression of Congressional intent, the court is unwilling to take the drastic step of unraveling a provision specifically fashioned to protect this group of creditors.

**356**

The trustee's second argument fails for similar reasons. Section 365(d)(10) allows the court to suspend the duty of timely performance "after notice and a hearing and based on the equities of the case." The trustee argues that the fact that the debtor never used the equipment leased from FPL is an equitable factor that justifies treating FPL's claim as unsecured. This, argument, however, imports § 503(b)(1) into § 365(d)(10). Section 365(d)(10) is clearly independent of § 503(b)(1) and requires no showing that the lease expenses were actual and necessary expenses of the estate. This fact is not changed by the conversion of the case from chapter 11 to chapter 7.

### Conclusion

Based on the foregoing, FPL's Motion for Allowance and Payment of Lease Rejection Claim as Administrative Priority Claim under 11 U.S.C. §§ 503 and 365 is granted, and FPL is allowed a general unsecured claim in the amount of $50,156.66 and a chapter 11 administrative expense claim in the amount of $1,220.19. FPL's administrative expense claim is subordinated to the administrative expenses of the converted case pursuant to § 726(b).

**So Ordered.**