PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: MIDWAY AIRLINES
CORPORATION; In Re: MIDWAY
AIRLINES PARTS, LLC,

*Debtors.*

CIT COMMUNICATIONS FINANCE
CORPORATION,

*Appellant,*

v.

MIDWAY AIRLINES CORPORATION;
MIDWAY AIRLINES PARTS, LLC,

*Appellees,*

JOSEPH N. CALLAWAY,

*Trustee-Appellee.*

No. 04-1502

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CA-03-642-5-BO3; BK-01-2319-ATS)

Argued: December 1, 2004

Decided: May 2, 2005

Before NIEMEYER and MICHAEL, Circuit Judges,
and Norman K. MOON, United States District Judge
for the Western District of Virginia,
sitting by designation.

Reversed in part, affirmed in part, and remanded by published opinion. Judge Michael wrote the opinion, in which Judge Niemeyer and Judge Moon joined.

---

**COUNSEL**

**ARGUED:** Gregory Parker Chocklett, Raleigh, North Carolina, for Appellant. Alan Dale McInnes, KILPATRICK STOCKTON, L.L.P., Raleigh, North Carolina, for Appellees. **ON BRIEF:** Gerald A. Jeutter, Jr., KILPATRICK STOCKTON, L.L.P., Raleigh, North Carolina, for Appellees.

---

**OPINION**

MICHAEL, Circuit Judge:

In this bankruptcy case, filed under chapter 11 and later converted to chapter 7, a lessor of personal property asserted an administrative expense claim under § 365(d)(10) of the Bankruptcy Code for all payments due under the lease for the thirteen-month period beginning sixty-one days after the order for relief and ending when the debtor rejected the lease. The lessor also sought immediate payment of the administrative expense. The bankruptcy and district courts determined that the lessor was entitled to only a fraction of the amount due under the lease and denied the request for immediate payment. We conclude that § 365(d)(10) entitles the lessor to an administrative expense for all lease payments due in the thirteen-month period. Immediate payment is not required, however.

I.

Under a lease agreement entered into in February 1999, Midway Airlines Corporation (Midway) leased telephone equipment (or a telephone system) from CIT Communications Finance Corporation (CIT). The lease was to run for sixty months beginning on June 17, 1999. The monthly payment was $11,891.50, representing $11,218.39 in rent and $673.11 in reimbursement for state and county taxes. The

lease provided for payment of late fees, interest on late payments, and reasonable attorney's fees and costs for collection efforts. On August 13, 2001, in the Eastern District of North Carolina, Midway filed a voluntary chapter 11 petition, which "constitute[d] an order for relief under [that] chapter." 11 U.S.C. § 301. Midway's bankruptcy petition had been filed for more than a year when, on October 10, 2002, CIT filed a motion to compel Midway to assume or reject the unexpired telephone equipment lease. On November 25, 2002, a consent order was entered allowing rejection of the lease. On December 20, 2002, CIT filed a motion for the allowance of administrative expenses for past due post-petition lease payments. CIT asserted that it was entitled to (1) an administrative expense of $11,891.50 under § 503(b)(1)(A) of the Code for Midway's actual and necessary use of the telephone equipment during the first sixty days after the order for relief was entered and (2) an administrative expense of $199,426.35 under § 365(d)(10) for all rent, taxes, late fees, interest, and attorney's fees due under the lease for the thirteen months beginning sixty-one days after the order for relief was entered (October 13, 2001) and ending on the date the lease was rejected (November 25, 2002).

The bankruptcy court declined to rule immediately on CIT's § 503(b)(1)(A) claim, stating that an evidentiary hearing would be needed to consider "both use and actual benefit to the bankruptcy estate." J.A. 106. The court did rule definitively on the § 365(d)(10) claim. First, the court concluded that the equities of the case justified a reduced § 365(d)(10) allowance because (1) the telephone equipment was of little use to Midway, and (2) CIT knew that Midway was making only limited use of the equipment, "yet CIT made no effort to seek adequate protection for the equipment until more than a year after the order for relief." J.A. 106. As a result, the bankruptcy court allowed CIT a § 365(d)(10) administrative expense for four months of rent and taxes beginning sixty-one days after the order for relief. For the remaining nine months, the court allowed CIT an administrative expense only to the extent that Midway actually used and benefitted from the equipment. Second, the bankruptcy court refused to allow CIT any interest, late fees, or attorney's fees. Third, the bankruptcy court determined that CIT was not entitled to immediate payment because the court had deferred payment of other (allowed) administrative expenses.

CIT appealed the bankruptcy court's order on the § 365(d)(10) claim to the district court on July 11, 2003. On October 30, 2003, Midway's chapter 11 case was converted to chapter 7. *See* 11 U.S.C. § 1112. Later, on March 24, 2004, the district court affirmed the bankruptcy court's order with respect to the § 365(d)(10) claim. CIT appeals, asking us to review only conclusions of law reached by the bankruptcy and district courts. We review these conclusions de novo. *See Tavenner v. Smoot*, 257 F.3d 401, 405 (4th Cir. 2001).

## II.

CIT asserts on appeal that § 365(d)(10) entitles it to the full amount due under the telephone equipment lease for the thirteen-month period beginning sixty-one days after the order for relief was entered. We agree for the following reasons.

## A.

When a debtor is a lessee on the date of bankruptcy, the lease does not automatically become an obligation of the estate. Rather, the trustee (or debtor in possession) has the option to assume or reject the lease. *See* 11 U.S.C. § 365(a); 2 William L. Norton, Jr., Norton Bankruptcy Law & Practice 2d § 42:17 (2004). Section 362(a)'s automatic stay prevents the lessor from recovering the property or terminating the lease while the trustee is deciding whether to assume or reject it. *See* 11 U.S.C. § 362(a); 2 Norton, *supra*, § 39:17. Moreover, during this period the trustee can force the lessor to continue performing under the lease. 2 Norton, *supra*, § 42:17. In the event the trustee ultimately decides to assume the lease, and the lease is in default, the trustee is required to cure the default or provide adequate assurance that a prompt cure will be forthcoming. *See* 11 U.S.C. § 365(b)(1)(A).

If the trustee decides to reject the lease, however, the Code does not have a provision that requires the outright cure of any default. Thus, if the lease is rejected, an issue arises as to the nature of the lessor's remedy for recovering lease payments for the post-petition period during which the trustee was deciding to reject the lease and during which the estate possessed, and perhaps used, the property. Prior to 1994 the lessor's remedy was to file a claim for an administrative expense under § 503(b)(1)(A), which allows a lessor to recover

"the actual, necessary costs and expenses of preserving the estate." Under § 503(b)(1)(A), however, a lessor is compensated only for the estate's actual and necessary use of the property; in other words, there is no automatic entitlement to all payments due under the lease. *See Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 866 (4th Cir. 1994) ("[Section 503(b)(1)(A)] requires actual use of the creditor's property by the debtor, thereby conferring a concrete benefit on the estate before a claim is allowable as an administrative expense.") (internal quotation marks, citation, and emphases omitted); *see also In re Mr. Gatti's, Inc.*, 164 B.R. 929, 932 (Bankr. W.D. Tex. 1994) ("[I]f the lease was ultimately rejected, the estate was liable only for the period of actual use and only to the extent of real benefit received by the estate.").

In 1994 Congress made it easier for lessors of personal property to recover post-petition lease payments by adding § 365(d)(10) to the Code. Section 365(d)(10) provides that:

> The trustee shall timely perform all of the obligations of the debtor, except those specified in § 365(b)(2), first arising from or after 60 days after the order for relief in a case under Chapter 11 of this title under an unexpired lease of personal property . . . until such lease is assumed or rejected notwithstanding § 503(b)(1) of this title, unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof.

11 U.S.C. § 365(d)(10). Section 365(d)(10) is modeled on a very similar provision of the Code, § 365(d)(3), which requires that a trustee timely perform all obligations under a lease of nonresidential real property after an order for relief is entered. Notably, "[b]oth sections impose a duty of timely performance on debtor[s] . . . and both expressly specify that this duty exists 'notwithstanding section 503(b)(1)' of the Code." *In re E. Agri-Sys., Inc.*, 258 B.R. 352, 354 (Bankr. E.D.N.C. 2000). As a result, in construing § 365(d)(10), courts often look to decisions construing § 365(d)(3).[1] *See id.*

---

[1]These two provisions are not identical, however. Section 365(d)(10) applies only to chapter 11 cases, whereas § 365(d)(3) is not limited by

While it is clear that § 365(d)(10) and § 365(d)(3) impose on a trustee the duty to perform all lease obligations in a timely manner, these sections do not specify a lessor's remedy should the trustee fail to perform. Two lines of cases elaborate on the remedy available to a lessor. The first line of cases (the majority interpretation) holds that the lessor is entitled to an administrative expense for the missed payments under the lease. *See Towers v. Chickering & Gregory*, 27 F.3d 401, 404 (9th Cir. 1994); *In re E. Agri-Sys.*, 258 B.R. at 354-55. Under this interpretation a lessor is entitled to recover the total amount of payments due under the lease, including rent, taxes, interest, late fees, and attorney's fees. *See In re MUMA Svcs. Inc.*, 279 B.R. 478, 488-89 (Bankr. D. Del. 2002) (holding that § 365(d)(10) allows recovery of taxes, late fees, and attorney's fees to the extent permitted by the lease); *In re MS Freight Distrib., Inc.*, 172 B.R. 976, 978-79 (Bankr. W.D. Wash. 1994) (same for § 365(d)(3)); *see also Centerpoint Props. v. Montgomery Ward Holding Corp.*, 268 F.3d 205, 209 (3d Cir. 2001) ("The clear and express intent of § 365(d)(3) is to require the trustee to perform the lease in accordance with its terms."). According to the majority interpretation, "this administrative expense claim arises directly under § 365(d) and, as specifically stated in that statute, is independent from § 503(b)(1)." *In re E. Agri-Sys.*, 258 B.R. at 354. This interpretation rejects the argument that a lessor is still required to assert an administrative expense claim under § 503(b)(1)(A), reasoning that "[b]y providing for timely performance of *all* lease obligations, 'notwithstanding section 503(b)(1),' the statute has . . . granted priority payment status to the full amount of rent." *Towers*, 27 F.3d at 404. If the majority interpretation was applied to the present case, it would mean that CIT would be entitled to an administrative expense for all rent, taxes, interest, late fees, and attorney's fees due for the thirteen-month period (an amount totaling $199,426.35, according to CIT).

The second line of cases (the minority interpretation) holds that § 365(d)(10) and § 365(d)(3) do not entitle the lessor to an administrative expense; rather, the sections merely impose obligations on the

---

chapter. Also, under § 365(d)(3) the trustee is required to perform all lease obligations immediately upon the entry of an order for relief. Under § 365(d)(10) the trustee is not required to perform until sixty-one days after the entry of an order for relief.

trustee. *See In re Palace Quality Servs. Indus., Inc.*, 283 B.R. 868, 875 (Bankr. E.D. Mich. 2002); *In re Mr. Gatti's*, 164 B.R. at 944. According to the minority interpretation, if the trustee fails to perform his obligations under either section, the lessor must seek relief by invoking the more general remedies of the Code. For example, the lessor may move to lift or modify the automatic stay or move to modify or terminate the debtor's right to possession of the property. *See In re Mr. Gatti's*, 164 B.R. at 944. If the lessor wishes to assert a claim against the estate for unpaid rent, it must apply for an administrative expense under § 503(b)(1)(A), seeking recovery for actual and necessary use by the estate. *See In re Palace Quality*, 283 B.R. at 878. If this interpretation was applied to the present case, it would mean that CIT would have to assert an administrative expense claim under § 503(b)(1)(A), and recovery would be limited to an amount representing Midway's actual and necessary use of the telephone system.

B.

The correct interpretation of § 365(d)(10), we conclude, lies somewhere between the majority and minority positions. We agree with the majority interpretation's ultimate conclusion that a lessor is entitled to recover all payments due under the lease (including rent, taxes, interest, late fees, and attorney's fees) as an administrative expense if (1) the trustee fails to perform its obligations under § 365(d)(10), and (2) the court has not previously modified the trustee's obligations pursuant to § 365(d)(10). The provision makes clear that a lessor is entitled to the trustee's performance of all obligations under the lease. We disagree, however, with the majority interpretation's conclusion that § 365(d)(10) somehow creates an administrative expense claim that is distinct and independent from an administrative expense claim asserted under § 503(b). Rather, we conclude that a lessor must still assert its administrative expense claim under § 503(b); it simply does not assert the claim under the specific provision of § 503(b)*(1)(A)*. This conclusion is consistent with the language of § 365(d)(10), and it avoids creating ambiguities and conflicts with respect to other provisions in the Code.

1.

Again, § 365(d)(10) imposes on a trustee the duty to perform all obligations under a lease beginning sixty-one days after the entry of

an order for relief, but it does not specify the lessor's remedy if the trustee fails to perform. *See* 11 U.S.C. § 365(d)(10). We agree with the minority interpretation that "[i]t is obvious that Congress knows how to provide a specific remedy for breaches of Code obligations, but does not necessarily choose to do so for each affirmative duty imposed on a debtor." *In re Mr. Gatti's*, 164 B.R. at 943. When a provision of the Code imposes an obligation on the debtor or trustee but fails to provide the aggrieved party with a specific remedy, the aggrieved party must resort to the more general remedies afforded by the Code. *Id.* Thus, we agree with the minority interpretation's general proposition that a lessor's remedy for a trustee's failure to perform his obligations under § 365(d)(10) lies outside of § 365(d)(10); specifically, it lies under § 503(b). *See In re Palace Quality*, 283 B.R. at 878.

However, we part ways with the minority interpretation's ultimate conclusion that a lessor's remedy for seeking payments due under § 365(d)(10) is to assert an administrative expense claim under § 503(b)*(1)(A)*. Requiring the lessor to proceed under § 503(b)*(1)(A)* limits the amount the lessor can recover to a sum representing the actual and necessary use by the estate. Though § 365(d)(10) does not set forth the lessor's remedy should the trustee fail to perform his obligations, the section does indicate the relief that is available to the lessor. Section 365(d)(10) provides that the trustee "shall timely perform *all of the obligations* of the debtor . . . *notwithstanding section 503(b)(1)*." 11 U.S.C. § 365(d)(10) (emphases added). The minority interpretation's conclusion that a lessor must assert a claim under § 503(b)*(1)(A)* (with recovery limited to an amount representing actual and necessary use) goes against Congress's instruction that a lessor is entitled to the trustee's performance of all lease obligations. The conclusion is also at odds with the "notwithstanding section 503(b)(1)" proviso. As we will explain, § 365(d)(10) eliminates the requirement of asserting an administrative expense claim under § 503(b)*(1)(A)* and instead allows the assertion of a claim under the general provision of § 503(b) for recovery of all payments due under the lease.

We first examine the structure and nature of § 503, and then we consider a lessor's options prior to the enactment of § 365(d)(10). Section 503(b) begins with the overarching directive that "[a]fter

notice and a hearing, there shall be allowed administrative expenses . . . ." 11 U.S.C. § 503(b). The term "administrative expense" is not defined in the Code, but courts agree that an administrative expense has two defining characteristics: (1) the expense and right to payment arise after the filing of bankruptcy, and (2) the consideration supporting the right to payment provides some benefit to the estate. *See Hicks, Muse & Co. v. Brandt*, 272 B.R. 510, 512 (B.A.P. 1st Cir. 2002); *Employee Transfer Corp. v. Grigsby*, 831 F.2d 106, 110 (6th Cir. 1987); *Trs. of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir. 1986); *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir. 1984); *Cramer v. Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976); *see also Pa. Dept. of Envt'l Res. v. Tri-State Clinical Labs.*, 178 F.3d 685, 689-90 (3d Cir. 1999) ("[T]he language of § 503(b), read as a whole, suggests a quid pro quo pursuant to which the estate accrues a debt in exchange for some consideration necessary to the operation or rehabilitation of the estate."). As a general proposition, post-petition lease payments should have these two characteristics because the right to payment arises after the filing of bankruptcy, and the consideration supporting payment provides some benefit to the estate (the estate uses, or has the opportunity to use, the property). Nevertheless, not all post-petition lease payments were recoverable by the lessor before § 365(d)(10) was enacted in 1994. A lessor was prevented from the automatic recovery of the entire amount due under the lease because of § 503(b) and its non-exhaustive list of examples of administrative expense, one of which is the broad category of "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Before § 365(d)(10) was inserted in the Code, it was well-established that a lessor had to seek an administrative expense under § 503(b)(1)(A), which by its plain language limited the lessor's recovery to an amount representing the estate's actual and necessary use of the property. *See* 2 Norton, *supra*, § 42:17.

Section 365(d)(10) changed this by directing the trustee to "timely perform all of the obligations" under a lease, "notwithstanding section 503(b)*(1)*." Thus, when a lessor seeks an administrative expense for "all of the obligations" due under a lease, the "notwithstanding § 503(b)*(1)*" proviso in § 365(d)(10) relieves the lessor from proceeding under § 503(b)(1)(A), which would limit the recovery to an amount representing only the actual and necessary use by the estate.

*Cf. Cukierman v. Uecker*, 265 F.3d 846, 850 (9th Cir. 2001) ("[T]he 'notwithstanding section 503(b)(1)' proviso exempts the amount of lease obligations that a trustee must timely pay under § 365(d)(3) from § 503(b)(1)'s limitation of administrative expenses to the fair value of the debtor's use of the property."). The "notwithstanding § 503(b)*(1)*" language, however, does not exempt a claim for lease payments due under § 365(d)(10) from the general ambit of § 503(b). Section 365(d)(10) says only that a trustee "shall timely perform . . . notwithstanding section 503(b)*(1)*." The proviso did not use the broader language, "notwithstanding § 503(b)," which would have exempted a claim for payments due under § 365(d)(10) from all requirements of § 503(b). This reading is consistent with § 503(b)'s terms, which contemplate that a bankruptcy court may award administrative expenses for claims other than those specifically listed in § 503(b)(1)-(6). *See, e.g.*, *In re White Motor Credit Corp.*, 50 B.R. 885, 892 (Bankr. N.D. Ohio 1985) (noting that the general provision of § 503(b) can be read broadly to cover expenses incurred by members of the official creditors' committee).

A claim for lease payments due under § 365(d)(10) is still a claim for an administrative expense under § 503(b) because it bears the two characteristics of an administrative expense (the right to payment arises after the filing of the petition, and the estate receives beneficial consideration because the estate has the opportunity to use the property). A claim for unpaid lease payments is simply no longer asserted as one of the listed examples of administrative expense (that is, as a § 503(b)(1)(A) expense), and thus a lessor is not limited to the recovery of an amount representing only the actual and necessary use by the estate. Instead, the lessor may recover an amount representing "all of the obligations" under the lease.[2] *See* 11 U.S.C. § 365(d)(10). In enacting § 365(d)(10), Congress essentially made the determination that the trustee must pay the full price (as reflected by the lease terms) for the opportunity to use the property.

---

[2]Our holding today is limited to the use of § 503(b) by a lessor of personal property to assert an administrative expense claim for lease payments that a trustee failed to make as required by § 365(d)(10). It does not alter the general requirement that administrative expense claims relating to the operation and preservation of the estate must be asserted under § 503(b)*(1)(A)*.

2.

There is a second, and more important, reason for concluding that § 365(d)(10) allows a lessor to recover an administrative expense under § 503(b). Such a conclusion avoids the creation of ambiguities and conflicts that result from applying the majority interpretation, which holds that an administrative expense claim under § 365(d)(10) is independent of § 503(b). First, it is not clear how the majority interpretation arrives at the conclusion that an independent § 365(d)(10) administrative expense claim is entitled to priority comparable to that of a § 503(b) claim. *See In re E. Agri-Sys.*, 258 B.R. at 354. Section 507 of the Code establishes the order of priorities for various types of claims against the estate. First in priority are "administrative expenses allowed under section 503(b)." 11 U.S.C. § 507(a)(1). Notably absent from the list of priorities is any reference to an independent § 365(d)(10) administrative expense. If, however, a claim for unpaid lease payments due under § 365(d)(10) is an administrative expense claim under § 503(b), then the claim has priority under § 507(a).

Second, the majority interpretation's conclusion that § 365(d)(10) creates an administrative expense claim independent of § 503(b) results in a conflict between § 365(d)(10) and § 348(d). When a case is converted from chapter 11 to chapter 7, § 348(d) is triggered and adjusts the priorities of claims against the estate that arise after the order for relief was entered but prior to conversion. As a general rule § 348(d) mandates that claims arising after the order for relief but before conversion are treated "for all purposes" as if they had arisen immediately before the date of the filing of the petition. These claims therefore lose their priority over other pre-petition claims. *See* 11 U.S.C. § 348(d). The only type of claim that § 348(d) specifically excepts from its general rule is "a claim specified in section 503(b)." *Id.* Thus, "claims specified in § 503(b) remain priority claims under § 507(a)(1) [after conversion]." *In re E. Agri-Sys.*, 258 B.R. at 355. However, even pre-conversion § 503(b) claims are subordinated to post-conversion § 503(b) claims. *See* 11 U.S.C. § 726(b).

Under the majority interpretation an administrative expense claim for missed lease payments arises solely under § 365(d)(10), not under § 503(b). Because § 348(d) excepts only claims "specified in § 503(b)," it follows that an independent § 365(d)(10) claim should be

treated "for all purposes" as if it had arisen prior to the filing of the bankruptcy petition once a case is converted from chapter 11 to chapter 7. 11 U.S.C. § 348(d). After the conversion a § 365(d)(10) claim would be equivalent in priority to pre-petition, unsecured claims but subordinated to all other post-petition § 503(b) administrative expense claims. The majority interpretation appears to acknowledge that it would be strange for a § 365(d)(10) claim to lose its priority when a case converts to chapter 7; to avoid this result, the majority interpretation simply concludes that a § 365(d)(10) claim retains its priority after conversion because to hold otherwise would mean that "§ 365(d)(10) would become a nullity in converted cases." *In re E. Agri-Sys.*, 258 B.R. at 355. The lack of a better explanation for how, under the Code, an *independent* § 365(d)(10) administrative expense claim retains its priority after conversion caused at least one court to adopt the minority interpretation. *See In re Palace Quality*, 283 B.R. at 878. Again, a lessor's remedy under the *minority* interpretation is to assert an administrative expense claim under § 503(b)*(1)(A)*, "a claim specified in section 503(b)." 11 U.S.C. § 348(d). Thus, a lessor's claim under the minority interpretation always retains priority by the terms of § 348(d).

Our interpretation avoids the conflict between § 365(d)(10) and § 348(d) that results from applying the majority interpretation. As discussed above, § 365(d)(10) does not "creat[e] some type of quasi-administrative claim that stands apart from administrative claims allowed under Section 503." *In re Macomb Occup. Health Care, LLC*, 300 B.R. 270, 279 (Bankr. E.D. Mich. 2003). Rather, a claim for payments due under § 365(d)(10) is an administrative expense claim asserted under § 503(b). Because § 348(d) preserves the priority of "a claim specified in section 503(b)," the claim retains its priority after conversion. In the present case CIT's administrative expense claim retains its priority status. However, as is the case with all chapter 11 administrative expense claims, it is subordinated to post-conversion administrative expense claims by § 726(b). *See In re E. Agri-Sys.*, 258 B.R. at 355.

Third, a further problem with the majority interpretation is that it fails to identify a logical procedural framework for asserting an independent § 365(d)(10) administrative expense claim. Some courts following the majority view have concluded that § 365(d)(3) and (by

analogy) § 365(d)(10) administrative expenses "constitute[ ] . . . administrative expense[s] without notice and a hearing." *See, e.g., In re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986); *see also Calet Hirsch & Ferrell, Inc. v. Microvideo Learning Sys.*, 254 B.R. 90, 93 (Bankr. S.D.N.Y. 1999). This conclusion is unsubstantiated because § 365(d)(10) says nothing one way or the other about the procedure for asserting a claim against the estate. If a claim for payments due under § 365(d)(10) is a claim for an administrative expense under § 503(b), however, a procedural framework is already in place. Section 503(a) provides that "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." 11 U.S.C. § 503(a). Section 503(b) provides that a court may not award an administrative expense claim until "[a]fter notice and a hearing." Accordingly, our construction — that a claim for unpaid lease payments due under § 365(d)(10) is a § 503(b) administrative expense claim — provides clear direction as to how such a claim is asserted, considered, and determined.

3.

We turn now to the bankruptcy court's equitable adjustment of CIT's administrative expense claim for lease payments covering the thirteen months beginning sixty-one days after the order for relief. Section 365(d)(10) mandates that after the sixty-day period, the trustee shall timely perform all obligations under the lease "unless the court, after notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof." 11 U.S.C. § 365(d)(10). The bankruptcy court concluded that the equities justified reducing CIT's administrative expense claim because (1) the telephone equipment was of little use to Midway, and (2) CIT knew that Midway was making only limited use of the equipment, yet CIT did not seek adequate protection for more than a year after the order for relief. As a result, the bankruptcy court allowed CIT an administrative expense for only four months of rent and taxes. As for the remaining nine months, the court allowed CIT an administrative expense only to the extent the telephone equipment was actually used by and benefitted Midway. The court refused to allow CIT any interest, late fees, or attorney's fees.

The bankruptcy court erred because § 365(d)(10) does not allow a court to make an equitable adjustment of the amount recoverable as an administrative expense when the trustee fails to perform as required by § 365(d)(10). Section 365(d)(10) requires that the trustee timely perform all obligations under a personal property lease unless the court, "based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof." 11 U.S.C. § 365(d)(10). By its terms the statute allows a bankruptcy court to modify only the trustee's actual performance under § 365(d)(10), including his ongoing obligation to make full payments under the lease on a timely basis. This equitable modification provision allows a court to modify both the amount the trustee must pay each installment period and the timing of such payments. The provision does not, however, authorize a bankruptcy court to make an equitable adjustment of the amount recoverable as an administrative expense under § 503(b) should the trustee fail to make payments as they come due under § 365(d)(10). In short, we read the equitable modification provision as authorizing a bankruptcy court to modify, based on the equities, a trustee's responsibilities on a prospective basis only. A trustee cannot remain idle after the sixty-day grace period, neither seeking modification of nor fulfilling his obligations under the lease, and then ask for a retroactive modification of his obligations when the lessor seeks an administrative expense. *See In re The Elder-Beerman Stores Corp.*, 201 B.R. 759, 764 (Bankr. S.D. Ohio 1996) ("[W]here the debtor has allowed the 60-day abeyance period to lapse yet fails to challenge or fulfill its obligations, the court is reluctant to retroactively apply any equitable analysis under § 365(d)(10)."). "To [allow this] would be to dilute the duties Congress intended to impose upon the debtor [or trustee] when the 60-day period was created." *Id.* This interpretation is consistent with the overall purpose of § 365(d)(10), which is to "shift to the debtor the burden of bringing a motion while allowing the debtor sufficient breathing room after the bankruptcy petition to make an informed decision." H.R. Rep. No. 103-835, at 50 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3359.

In the present case the bankruptcy court found that "Midway held out great hope that it would be able to reorganize its debts and remain a prominent local airline carrier. Consequently, Midway chose not to reject its operating leases until absolutely necessary." J.A. 104. In light of these goals and circumstances, Midway should have asked the

bankruptcy court to reduce its obligations under the lease immediately after the grace period because it needed more time to decide whether to assume the lease, but could not afford to make full payments. Instead, Midway did nothing for thirteen months. Because § 365(d)(10) does not allow a bankruptcy court to modify, based on the equities, a lessor's administrative expense claim for payments missed under § 365(d)(10), the bankruptcy court had no authority to allow CIT an administrative expense for less than the full amount that had become due under the lease.

## III.

We finally consider CIT's assertion that it is entitled to immediate payment of its administrative expense, regardless of the administrative solvency of the estate. CIT makes two separate arguments here. First, it argues that a lessor who is allowed an administrative expense against the estate for unpaid lease obligations due under § 365(d)(10) is entitled to be paid before all other administrative expense creditors; in other words, the lessor's administrative expense claim has super-priority over other administrative expenses of the estate. Second, CIT argues that when a lessor is allowed an administrative expense pursuant to § 365(d)(10) and § 503(b), it is entitled to immediate payment. We reject both arguments.

We turn first to CIT's argument that its claim should be paid before all other administrative expenses. Of course, the general rule is that all administrative creditors in a bankruptcy case are to be treated equally. *See Cochise Coll. Park, Inc. v. Perry*, 703 F.2d 1339, 1356 n.22 (9th Cir. 1983). "[I]f one claimant is to be preferred over others, the purpose should be clear from the statute." *Nathanson v. NLRB*, 344 U.S. 25, 29 (1952). As discussed above, an administrative expense claim seeking payments due under § 365(d)(10) is a claim under § 503(b). Because there is no provision that entitles this type of § 503(b) administrative expense claim to any super-priority over other pre-conversion § 503(b) claims, it is payable to the same extent as any other pre-conversion administrative expense under § 503(b). *See Thomas Corp. v. Nicholas*, 221 F.2d 286, 289 (5th Cir. 1955) ("[I]f funds are insufficient to pay all [administrative expenses] they must individually suffer pro rata." (internal quotation marks and citation omitted)). Further, when a case is converted to chapter 7, a pre-

conversion § 503(b) administrative expense claim is explicitly subordinated to a post-conversion § 503(b) claim. *See* 11 U.S.C. § 726(b). We simply join the "large number of cases [that] require[ ] the lessor to stand in line with other [administrative expense] claimants." *In re Joseph C. Spiess Co.*, 145 B.R. 599, 607-08 (Bankr. N.D. Ill. 1992). It is not clear from the record whether the estate in this case is administratively insolvent. If it is, then CIT must bear its proportional burden along with the other pre-conversion administrative expense claimants. Further, because this case has been converted to chapter 7, CIT's allowance, like all pre-conversion administrative expenses allowed under § 503(b), is subordinated to post-conversion administrative expenses allowed under § 503(b). *See* 11 U.S.C. § 726(b).

We next consider CIT's argument that it is entitled to immediate payment of its allowed administrative expense. Here, we emphasize once again that CIT's claim is one under § 503(b) and, as such, is governed by the rule that applies to all administrative expense claims asserted under § 503(b), that is, that "the time of payment . . . is within the discretion of the bankruptcy court." *In re Am. Mgmt. Res. Corp.*, 51 B.R. 713, 719 (Bankr. Utah 1985). "[N]either the Code nor the Bankruptcy Rules prescribe[ ] the relative timing of payments within a particular priority." 2 Norton, *supra*, § 42:14. While an administrative expense under § 503(b) must be paid in cash on the effective date of the plan in a chapter 11 proceeding, *see* 11 U.S.C. § 1129(a)(9)(A), and must be paid first upon a distribution of the assets in a chapter 7 proceeding, *see* 11 U.S.C. § 726(a)(1), bankruptcy courts have wide latitude in deciding whether to order payment prior to these deadlines. "In most situations the courts prefer to postpone payment of the administrative claim until confirmation of a plan or the distribution in a liquidation. However, once a claimant has requested payment, the court may exercise its discretion whether circumstances warrant immediate response." 2 Norton, *supra*, § 42:14 (citation omitted). Accordingly, the decision whether to order immediate payment of administrative expenses allowed pursuant to § 365(d)(10) and § 503(b) is left to the discretion of the bankruptcy court. In the present case, the court determined that CIT was not entitled to immediate payment because the bankruptcy court had deferred payment of other allowed administrative expenses. This determination was within the court's discretion.

IV.

We reverse the district court's order affirming the bankruptcy court's allowance to CIT of an administrative expense for less than the full amount due from Midway under the telephone equipment lease for the thirteen-month period beginning sixty-one days after the order for relief and ending on the date the lease was rejected. CIT is entitled to the full amount due for this period. (The exact amount will be determined on remand.) We affirm the district court's order affirming the bankruptcy court's determination to defer payment of CIT's administrative expense. The case is remanded for further proceedings consistent with this opinion.

*REVERSED IN PART*,
*AFFIRMED IN PART*,
*AND REMANDED*