### In re DOUBLE G TRUCKING OF THE ARLATEX, INC., Debtor.

### No. 1:09–bk–73431.

United States Bankruptcy Court, W.D. Arkansas, El Dorado Division.

Dec. 20, 2010.

Michael William Frey, Attorney at Law, Camden, AR, for Debtor.

## *ORDER*

JAMES G. MIXON, Bankruptcy Judge.

This issue presented before the Court is whether Trans Lease, Inc. (Trans Lease) is entitled to administrative expenses as a result of a lease entered into with Double G Trucking of the Arlatex, Inc. (Debtor).

The Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on July 13, 2009. On June 17, 2010, Trans Lease filed an Application for Administrative Expense Claim. On August 20, 2010, Trans Lease filed an Amended Application. On August 24, 2010, a hearing was held in El Dorado,

Arkansas and the matter was taken under advisement. The Debtor and Trans Lease filed briefs in the matter.

The Court has jurisdiction under 28 U.S.C. § 157 and § 1334. The pending matter is a core proceedings pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter a final judgment in the case.

## I.

### FACTS

On December 26, 2006, the Debtor entered into a TRAC Motor Vehicle Lease with Trans Lease. Pursuant to the terms of the lease, the Debtor was to pay a monthly rental of $4,768.77 for the use of three tractors for 42 months. The agreement stated the Debtor was responsible for all maintenance of the tractors and the Debtor assumed all risk of loss and the risk of damage. The Debtor stopped making monthly payments and filed a petition for Chapter 11 bankruptcy. The Debtor maintained possession of the tractors after filing the petition for relief.

On August 14, 2009, Trans Lease filed a Motion to Require Assumption or Rejection of Unexpired Lease. A hearing was held on October 27, 2009, in which the Debtor argued that the agreement with Trans Lease was a secured transaction rather than a true lease. The matter was taken under advisement.

On December 11, 2009, Trans Lease filed a Motion for Adequate Protection. A hearing was held and the motion was granted by order on March 1, 2010. The Debtor was ordered to pay adequate protection payments in the amount of $750.00 per month beginning in March 2010. The Debtor made two payments.

On April 20, 2010, the Court entered an order finding that the transaction between the Debtor and Trans Lease was a lease and that the Debtor was required to assume or reject the lease. The Debtor thereafter rejected the lease on April 30, 2010, and surrendered the three tractors to Trans Lease on May 17, 2010.

The Debtor's President, Gary Griffis, testified on August 24, 2010, that after filing the petition the Debtor continued to use two of the three tractors to transport building products which was the nature of the Debtor's business. He testified that their use was necessary to generate cash flow and keep the company viable. One of the tractors was inoperable at the time of the petition filing and was never used post petition. Another tractor developed problems in February or March of 2010 and the Debtor discontinued operating it.

## II.

### ARGUMENT

Trans Lease argues that they are entitled to an administrative expense claim pursuant to 11 U.S.C. § 503(b)(1)(A) for all rental obligations that accrued during the first 59 days after the petition was filed and that they are automatically entitled to administrative expense treatment for all rental obligations that accrued from the 60th day after the petition was filed until the date the equipment was surrendered pursuant to 11 U.S.C. § 365(d)(5). The total amount requested for the administrative expense is $46,631.46.[1]

The Debtor argues the Court should balance the equities and look to the

---

1. Trans Lease subtracted the $1,500.00 paid in adequate protection payments from the requested total. Trans Lease argues in the alternative, they were at least owed $35,728.57.

The $35,728.57 figure substitutes the two lease payments with the two adequate protection payments that were made.

amount of the adequate protection payments as the appropriate monthly rate.

## III.

## DISCUSSION OF AN ADMINISTRATIVE CLAIM FOR THE FIRST 59 DAYS PURSUANT TO 11 U.S.C. § 503(b)(1)(A)

11 U.S.C. § 503(b)(1)(A) provides that: [a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502[f] of this title, including the actual, necessary costs and expenses of preserving the estate....

█ The party claiming entitlement to administrative status has the burden of proof. *General American Transp. Corp. v. Martin (In re Mid Region Petroleum, Inc.)* 1 F.3d 1130, 1132 (10th Cir.1993); *In re Smith,* 315 B.R. 77, 79 (Bankr.W.D.Ark. 2004). If the party fails to meet their burden of proof and does not establish entitlement to an administrative claim, the claim is only treated as a general, unsecured pre-petition claim. *In re Mid Region Petroleum, Inc.,* 1 F.3d at 1132.

█ One of the goals of Chapter 11 is to keep administrative costs to a minimum, accordingly § 503 is not intended to create a broad category of administrative expenses. *In re Mid Region Petroleum, Inc.,* 1 F.3d at 1134. In order to obtain administrative expense priority and qualify as "actual, necessary costs and expenses of preserving the estate" two elements must be satisfied: (1) it must have arisen from a transaction with the estate, and (2) it must have benefitted the estate in a demonstrable way. *McMillan v. LTV Steel, Inc.,* 555 F.3d 218, 225–226 (6th Cir.2009); *Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus. Inc.),* 66 F.3d 1091, 1094 (9th Cir. 1995); *In re Mid Region Petroleum, Inc.* 1 F.3d at 1133; *In re Smith,* 315 B.R. at 79.

"Transaction" is broadly defined for purposes of § 503(b)(1)(A). In re *Athens/Alpha Gas Corp.,* 332 B.R. 578, 580 (8th Cir. BAP 2005)(The Bankruptcy Appellate Panel found that a debtor's post petition act of exercising control over all of the profits thereby depriving the appellants of their revenue, when the appellants were entitled to 45% of the profits pursuant to a prepetition agreement, is a transaction.) The creditor must demonstrate a tangible benefit to the estate. *Williams v. IMC Mortgage Co. (In re Williams),* 246 B.R. 591, 594 (8th Cir.1999).

Two lines of cases have developed regarding payments of administrative expenses under lease agreements pursuant to § 503(b)(1)(A). The first line of cases find that rent should be based on reasonable rental value without regard to the debtor's actual use. The leading case supporting this view is *In re Fred Sanders Co.,* 22 B.R. 902 (Bankr.E.D.Mich.1982). See also *Mohawk Industries, Inc. v. Related Industries,* 64 B.R. 667 (Bankr.D.Mass. 1986); *In re Xonics, Inc.,* 65 B.R. 69 (Bankr.N.D.Ill.1986). The rationale behind these cases is that the debtor or trustee has the power to minimize administrative costs by taking prompt action. However, the downside is that lessors that allow the debtor or trustee breathing room could be penalized if all of the leased property is not being used.

The other line of cases find that rent should be based on the debtors actual use of the leased property. *In re Mid Region Petroleum, Inc.,* 1 F.3d 1130 (10th Cir. 1993); *Broadcast Corp. of Georgia v. Broadfoot,* 54 B.R. 606 (N.D.Ga.1985), aff'd in part, rev'd in part, In re *Subscription Television of Greater Atlanta,* 789 F.2d 1530 (11th Cir.1986); *In re Pickens–Bond Construction Co.,* 83 B.R. 581 (Bankr. W.D.Ark.1988). The rationale for these cases is that costs for the administration of

the estate should be minimized to protect unsecured creditors' interests.

## IV.

### ANALYSIS OF 11 U.S.C. § 503(b)(1)(A)

■ The first element that must be satisfied is that the expense arose from a transaction with the estate. The Debtor made a decision to retain the tractors after filing the bankruptcy petition. This decision, to continue in possession of the tractors that the Debtor did not own, falls within the broad definition of a "transaction with the estate."

The next element that must be satisfied is that the transaction must have benefitted the estate. Based on the testimony of the Debtor's President who testified that the use of the tractors was necessary to the reorganization of the Debtor, the Court finds the actual use of the two tractors was a tangible benefit to the estate. The question remains, what of this third tractor that was inoperable during the first 59 days. This Court finds that this third tractor did not benefit the estate. A lessor should not to be penalized for cooperating with the debtor and giving him time to resolve his financial problems; however, the plain language of § 503(b)(1)(A) specifies that in order to obtain administrative expense status, the expenses must be "actual, necessary costs and expenses." Therefore, if evidence is presented that some of the leased property was not used or was inoperable, it cannot be said to be necessary nor can it be said to benefit the estate. While this puts the burden on the lessor, who is now in the position of having to make sure his or her equipment is being utilized, basing the amount of the administrative expense on the rental value ignores the plain language of § 503(b)(1)(A) and unfairly takes money away from other creditors.

■ The best rule is to find a presumption that the reasonable rental value of the property is equivalent to the amount of rent fixed in the lease; however, this presumption can be rebutted by contradictory evidence, such as the actual use of the equipment. See *In re Dant & Russell, Inc.,* 853 F.2d 700, 707 (9th Cir.1988). Therefore, the burden falls on the debtor. When evidence was introduced that only two tractors were used and one was inoperable, the presumption was rebutted.

The Debtor argues that the amount of the adequate protection payments should be used rather than rental value. There was no evidence offered that the lease payment of $1,589.59 per vehicle was unreasonable. The Debtor offers no case law that would suggest that it is appropriate to use adequate protection payments for purposes of § 503(b)(1)(A) and the Court is not inclined to find the argument persuasive in this case. Adequate protection involves a completely different concept of compensating the creditor for the depreciation of his collateral; whereas, administrative expenses pursuant to § 503(b)(1)(A) involves compensating a creditor for a debtor's use of property that was necessary to preserving the estate during the first 59 days after filing the petition.

Therefore, Trans Lease is entitled to an administrative expense pursuant to § 503(b)(1)(A) for the first 59 days for the two tractors, in the amount of $1,589.59 per vehicle per month or $6,166.74.[2]

---

**2.** $1,589.59 × 2 = $3,179.18 a month in rent for two tractors; $3,179.18 × 12 = $38,150.16 a year in rent for two tractors; $38,150.16 / 365 = $104.52 a day in rent for two tractors; $104.52 × 59 = $6,166.74 for 59 days of rent for two tractors.

## V.

## DISCUSSION OF AN ADMINISTRATIVE CLAIM, FROM 60 DAYS AFTER FILING THE PETITION UNTIL REJECTION, PURSUANT TO 11 U.S.C. § 365(d)(5)

11 U.S.C. § 365(d)(5), in relevant part, provides that:

> [t]he trustee shall timely perform all of the [lease] obligations of the debtor ... first arising from or after 60 days after the order for relief in a case under chapter 11 of this title under an unexpired lease of personal property ... until such lease is assumed or rejected notwithstanding section 503(b)(1) of this title, unless the court, after a notice and a hearing and based on the equities of the case, orders otherwise with respect to the obligations or timely performance thereof.

■ The administrative expenses listed in the subsections of § 503(b) are not exclusive. *In re Burival*, 613 F.3d 810, 812 (8th Cir.2010). The language, "notwithstanding section 503(b)(1)" found in § 365(d)(5) eliminates the requirement of § 503(b)(1)(A) and allows the assertion of a claim under the general provisions of § 503(b) for recovery of the payments due under the lease. *CIT Comm. Fin. Corp. v. Midway Airlines Corp. (In re Midway Airlines Corp.)*, 406 F.3d 229 (4th Cir. 2005). Accordingly, a claim under § 365(d)(5) is based on the amount due under the lease and is not limited by the need to show a benefit to the estate as required by § 503(b)(1)(A). *In re Midway Airlines Corp.*, 406 F.3d at 238. The Fourth Circuit explains:

> A claim for lease payments due under [§ 365(d)(5)][3] is still a claim for an administrative expense under § 503(b) because it bears the two characteristics of an administrative expense (the right to payment arises after the filing of the petition, and the estate receives beneficial consideration because the estate has the opportunity to use the property.)

*In re Midway Airlines Corp.*, 406 F.3d at 237. § 365(d)(5) makes clear that the debtor shall perform all obligations under a lease at the contract rate until the lease is rejected. *Giant Eagle, Inc. v. Phar-Mor, Inc.*, 528 F.3d 455, 460 (6th Cir.2008)(quoting *In re At Home Corp.*, 392 F.3d 1064, 1068 (9th Cir.2004)).

■ It is the debtor who must persuade the court that based on the equities of the case that such rent should not be paid or reduced by some amount. *Giant Eagle, Inc. v. Phar-Mor, Inc.*, 528 F.3d 455, 460 (6th Cir.2008). "At a minimum, debtors should make their requests to modify lease obligations explicit by invoking the Court's § 365(d)(5) authority and noting the equities that support modification." *In re Federal-Mogul Global Inc.*, 222 Fed.Appx. 196, 200 (2007). According to the Fourth Circuit, the equitable modification provision of § 365(d)(5) does not allow a court to make an equitable adjustment of the amount recoverable as an administrative expense when the debtor in possession fails to perform as required; rather, it only allows a court to modify the debtor in possession's actual performance. *In re Midway Airlines Corp.*, 406 F.3d at 240. Therefore, in the Fourth Circuit, § 365(d)(5) applies on a prospective basis only, there is no retroactive modification when the lessor seeks an administrative expense. *In re Midway Airlines Corp.*, 406 F.3d at 240. However, other courts only goes so far to state that bankruptcy courts should be "reluctant" to grant ret-

---

**3.** BAPCPA amended § 365 by renumbering former § 365(d)(10) as § 365(d)(5). BAPCPA did not alter or amend the language of former § 365(d)(10).

roactive relief, but found that in extraordinary circumstances it was possible. *In re Elder–Beerman Stores, Corp.,* 201 B.R. 759, 764 (Bankr.S.D.Ohio 1996). See also, *In re Hayes Lemmerz Inter'l., Inc.* 340 B.R. 461, 485 (Bankr.D.Del.2006).

## VI.

### ANALYSIS OF 11 U.S.C. § 365(d)(5)

 The Debtor argues that under the circumstances § 365(d)(5) should not apply to this period during which they challenged the nature of the agreement and retained the tractors. There is nothing inequitable about holding the Debtor to its bargain during this "challenge period." The Debtor never requested that the lease be modified because of the inoperable tractors. The Debtor could have immediately petitioned to reject and abandon any tractors that were no longer of any value to the estate. The Debtor did not do so. The Court does not find that based on the equities of the case the adequate protection payments should or could be used rather than the rate due per the lease for purposes of § 365(d)(5), as the Debtor argues. It is not necessary for the Court to make a bright line rule regarding § 365(d)(5) and a bankruptcy court's power to retroactively modify a lease at this time because there is no question that retroactive modification of a lease is not proper in this case.

Trans Lease argues that they should be entitled to lease payments until the date of surrender, rather than the date of rejection. Trans Lease cites no case law and the Court is not inclined to extend the time period beyond the date of rejection, as called for by the statute.

Accordingly, the Debtor owes the contract amount of the lease payments for the period of 60 days after the filing of the bankruptcy petition until rejection of the lease, or from September 11, 2009 to April 30, 2010, less the adequate protection payments of $1,500.00. Therefore, the Debtor owes $34,716.18 pursuant to § 365(d)(5) and § 503(b).[4]

## VII.

### CONCLUSION

Based on the foregoing, Trans Lease is entitled to an allowance and payment of an administrative expense claim in the amount of $6,166.74 pursuant to § 503(b)(1)(A) and $34,716.18 pursuant to § 365(d)(5) and § 503(b), for a total amount of $40,882.92.

IT IS SO ORDERED.

---

**4.** $1,589.59 × 3 = $4,768.77 a month in rent for three tractors; $4,768.77 × 12 = $57,225.24 a year in rent for three tractors; $57,225.24 / 365 = $156.78 a day in rent for three tractors; ($156.78 × 231 days) − $1,500.00 in adequate protection payments = $34,716.18.